**In re Jacob F. BUTCHER a/k/a Jake F. Butcher and Jake Butcher, Debtor.**

**Bankruptcy No. 3–83–01036.**

United States Bankruptcy Court, E.D. Tennessee.

Feb. 1, 1984.

See also, Bkrtcy., 38 B.R. 796.

Bass, Berry & Sims, J.O. Bass, Jr., Nashville, Tenn., for trustee.

Neal & Harwell, James F. Sanders, William T. Ramsey, Nashville, Tenn., for debtor.

## MEMORANDUM ON TRUSTEE'S MOTION TO REQUIRE DEBTOR TO SURRENDER BOOKS AND RECORDS

CLIVE W. BARE, Bankruptcy Judge.

At issue is the debtor's duty to surrender to the trustee recorded information pertaining to property of the estate, 11 U.S.C.A. § 521(3) (1979). Asserting the constitutional privilege against self-incrimination, the debtor contends that compelling him to turn over all books and records relating to property of the estate will violate his Fifth Amendment rights. The trustee maintains that no Fifth Amendment privilege is available to the debtor with respect to the turnover of recorded information, whether the information consists of personal papers or records of corporations or other business entities in the possession or within the control of the debtor in a representative capacity.

### I

On June 29, 1983, an involuntary chapter 7 proceeding, 11 U.S.C.A. § 303 (1979), was commenced against the debtor by three petitioning creditors (First Peoples Bank of Washington County,[1] American National Bank & Trust Company of Chattanooga, and the Federal Deposit Insurance Corporation). Subsequent to trial an order for relief was entered on August 22, 1983. Debtor filed a motion on September 7, 1983, requesting a stay of both his duty to: (1) file a list of creditors, schedule of assets and liabilities, and statement of financial affairs and (2) surrender recorded information pertaining to property of the estate. During the September 30, 1983, hearing on this motion, James F. Sanders, one of the debtor's attorneys, advised the court that the debtor would comply with his obligations under the Bankruptcy Code. However, Sanders further stated that the debtor would selectively assert a Fifth Amendment privilege in preparing schedules and responding to questions in his statement of financial affairs. Likewise, the debtor proposed to turn over to the trustee only non-incriminating records relating to property of the estate. To avoid any question of waiver, Sanders also stated, essentially, that the court should compel the debtor to comply with any required duties. The court fixed October 28, 1983, as the date for filing the debtor's schedule of assets and liabilities and a statement of his financial affairs. Schedules and a statement of financial affairs including a considerable amount of information and several assertions of a Fifth Amendment privilege were filed on October 31, 1983.

At the initial Code § 341 meeting of creditors, held on September 28, 1983, John Bailey was elected trustee.[2] At a subsequent § 341 meeting of creditors, on November 14, 1983, J.O. Bass, Jr., attorney for the trustee, asked the debtor whether he was currently willing to turn over any documents or records to the trustee. Interjecting on behalf of his client, Sanders, after discussing the debtor's September 7, 1983, motion to stay compliance with 11 U.S.C.A. § 521 (1979) and pending request for procedural guidance from either the court or adversary counsel in surrendering records, stated in part:

> [W]e are not turning over any records because of the assertion of the Fifth Amendment privilege; and we are awaiting some further action by adversary counsel or the court before we do so.
>
> And in order to avoid any waiver problem, we are not voluntarily turning over any records right now, but I tell you, Mr.

---

1. On or about July 29, 1983, First Peoples Bank of Washington County was closed due to insolvency. The Federal Deposit Insurance Corporation (FDIC) was appointed as receiver of the bank pursuant to 12 U.S.C.A. § 1821(e) (1980). Thereafter, FDIC in its receivership capacity was substituted for First Peoples Bank as an original petitioning creditor. See *In re Butcher,* 32 B.R. 572 (Bkrtcy.E.D.Tenn.1983) (FDIC is one entity in its corporate capacity and a second entity in its capacity as receiver of an original petitioning bank creditor).

2. An order of this court approving the election of Mr. Bailey as trustee was entered on September 30, 1983.

Bass, that there are records that we do intend to turn over.

Our assertion of the Fifth Amendment privilege with respect to records will be selective as has been our position all along in this case. We are not asserting a blanket Fifth Amendment privilege and moreover the reason that the motion was filed in the first place was to make sure that we had asserted the privilege at the earliest possible time so that any provision of the code or any case law to the effect that there was an automatic turnover and we lost the right to assert that privilege would [not] bar us.

That's what we're trying to do, and in order to remain consistent in that position, we are not going to turn over any records until the court orders us to do so.

Transcript of Section 341 Meeting, November 14, 1983, at 6–7.

Hence, on November 23, 1983, the trustee filed a motion requesting the court to order the debtor to surrender recorded information pertaining to property of the estate.

## II

■ Section 521 of Title 11 of the United States Code enacts in material part:

*Debtor's Duties*

The debtor shall—

. . . . .

(2) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;

(3) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate

. . . .

The debtor, however, contends that his Fifth Amendment privilege against self-incrimination excuses him from surrendering some books and records relative to property of his estate. The Fifth Amendment recites in relevant part: "No person ... shall be compelled in any criminal case to be a witness against himself ...." U.S.

Const. amend. V. The amendment protects an individual from self-incriminating disclosures in civil as well as criminal proceedings. *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924); *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

Asserting that the debtor's records are necessary to properly administer the estate, the trustee denies that the debtor is entitled to a privilege exempting him from turnover of recorded information pertaining to property of the estate. As authority for his position, the trustee cites United States Supreme Court cases decided between 1911 and 1924, inclusive. The first of these cases is *In re Harris*, 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 73 (1911), involving a district court order compelling the bankrupt to deliver his books of account to his receiver. The district court conditioned its order to permit the receiver to use the books for the purpose of the administration of the bankrupt's estate, and not for any criminal proceeding. Further, in case of a subpoena seeking production of the books the receiver was to notify the bankrupt to afford him an opportunity to assert any constitutional privilege. Contending the books contained incriminating information, the bankrupt challenged the district court order. In an opinion upholding the order, Justice Holmes wrote:

[N]o constitutional rights are touched. *The question is not of testimony, but of surrender,—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he no longer is entitled to keep.* If a trustee had been appointed, the title to the books would have vested in him by the express terms of § 70, and the bankrupt could not have withheld possession of what he no longer owned, on the ground that otherwise he might be punished. That is one of the misfortunes of bankruptcy if it follows crime. The right not to be compelled to be a witness against oneself is not a right to appropriate property

that may tell one's story. As the bankruptcy court could have enforced title in favor of the trustee, it could enforce possession *ad interim* in favor of the receiver. (Emphasis added.)

*In re Harris*, 221 U.S. at 279–80, 31 S.Ct. at 558.

Two years subsequent to the *Harris* decision, the Court was confronted with the question of whether a bankrupt's records were properly admitted as evidence in a criminal action wherein the bankrupt was convicted for concealing money from his trustee in bankruptcy. The opinion of the Court, also authored by Justice Holmes, recites:

> It is true that the transfer of the books may have been against the defendant's will, but it is compelled by the law as a necessary incident to the distribution of his property, not in order to obtain criminal evidence against him. Of course, a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime. If the documentary confession comes to a third hand *alio intuitu*, as this did, the use of it in court does not compel the defendant to be a witness against himself.

*Johnson v. United States*, 228 U.S. 457, 458–59, 33 S.Ct. 572, 57 L.Ed. 919 (1913).

*In re Fuller*, 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923), involved an involuntary petition against two individuals and their partnership. Upon his appointment, the receiver immediately demanded the books and records of both the partnership and the individual partners. Contending that the books and records sought by the receiver might tend to incriminate them, the bankrupts refused to surrender the records unless the receiver agreed not to release them to any district attorney. An agreement to this effect was reached. When a trustee in bankruptcy was appointed, the bankrupts demanded return by the receiver of the records previously surrendered. However, the referee in bankruptcy ordered the receiver to deliver the same records to the

bankruptcy trustee. With the exception of certain records previously returned by the receiver to the attorneys for the bankrupts, all of the bankrupts' records were delivered to the trustee. On the date of delivery a subpoena requesting production of the bankrupts' records was served on their trustee. The bankrupts and their attorneys were also ordered by the bankruptcy court to turn over to the trustee the records redelivered to them by the receiver. One of the bankrupts, Fuller, under an indictment arising out of the bankrupts' business affairs, applied for a stay of the turnover orders. Denying Fuller's application, the Court stated:

> ▮ *A man who becomes a bankrupt, or who is brought into a bankruptcy court, has no right to delay the legal transfer of the possession and title of any of his property to the officers appointed by law for its custody or for its disposition, on the ground that the transfer of such property will carry with it incriminating evidence against him.* His property and its possession pass from him by operation and due proceedings of law, and, when control and possession have passed from him, he has no constitutional right to prevent its use for any legitimate purpose. His privilege secured to him by the Fourth and Fifth Amendments to the Constitution is that of refusing himself to produce, as incriminating evidence against him, anything which he owns or has in his possession and control; but his privilege in respect to what was his and in his custody ceases on a transfer of the control and possession which takes place by legal proceedings and in pursuance of the rights of others, even though such transfer may bring the property into the ownership of control of one properly subject to subpoena duces tecum. (Emphasis added.)

*In re Fuller*, 262 U.S. at 93–94, 43 S.Ct. at 497–498.[3]

---

3. See also *Dier v. Banton*, 262 U.S. 147, 43 S.Ct. 533, 67 L.Ed. 915 (1923), another involuntary

bankruptcy case in which a district attorney sought production of a bankrupt's records in the

The precedent established by *Harris* and its progeny—the Fifth Amendment privilege against self-incrimination does not excuse a bankrupt from surrendering to his trustee books and records relating to property of the estate even though they contain incriminating matter—is founded upon a property concept. Under § 70a of the Bankruptcy Act of 1898, the trustee was vested by operation of law with title to the bankrupt's property, exclusive of any exempt property, including documents relating to the bankrupt's property. Quite simply, the bankrupt lost title to the documents relating to property of the estate and consequently had no right to retain those documents, even though they included information tending to incriminate the bankrupt.[4]

Under the Bankruptcy Code the commencement of a bankruptcy case creates an estate consisting generally of any property in which the debtor has an interest. 11 U.S.C.A. § 541 (1979). Although title vests in the debtor's estate, the bankruptcy trustee is the representative of the estate, 11 U.S.C.A. § 323(a) (1979). In a chapter 7 case it is the trustee's duty to collect and reduce to money the property of the debtor's estate. 11 U.S.C.A. § 704(1) (1979). A chapter 7 debtor's interest in property of the estate is transferred by operation of law, just as a bankrupt's interest was under the Bankruptcy Act of 1898. Hence, the unequivocal precedent established in *Harris*, which has never been expressly overruled, would appear to require the debtor to surrender all recorded information pertaining to property of his estate.[5]

hands of a receiver. The bankrupt sought to enjoin the receiver from making the records available to the district attorney on the basis that the records included incriminating matter and that his constitutional right to refuse to testify against himself would be violated. The district court declined to enjoin the receiver from making the records available to the district attorney. The Supreme Court held that the right of the alleged bankrupt to protest the introduction of his books as evidence in a criminal proceeding ceased when possession and control of those books passed to his receiver. The Court's opinion further provides:

> This change of possession and control is for the purpose of properly carrying on the investigation into the affairs of the alleged bankrupt and the preservation of his assets pending such investigation, the adjudication of bankruptcy vel non, and, if bankruptcy is adjudged, the proper distribution of the estate. It may be that the allegation of bankruptcy will not be sustained, and in that case the alleged bankrupt will be entitled to a return of his property, including his books and papers, and, when they are returned, he may refuse to produce them and stand on his constitutional rights. But while they are, in the due course of the bankruptcy proceedings, taken out of his possession and control, his immunity from producing them, secured him under the Fourth and Fifth Amendments, does not inure to his protection. *He has lost any right to object to their use as evidence because, not for purpose of evidence, but in the due investigation of his alleged bankruptcy and the preservation of his estate pending such investigation, the control and possession of his books and papers relating to his business were lawfully taken from him.*

■ It is pressed upon us that the bankrupt may prevent the use of such books and papers taken over by a receiver in the bankruptcy proceedings for evidence in a criminal case in the state court by resisting surrender and protesting against their use for such a purpose at the time the receiver took possession. But we think the alleged bankrupt has no such right. We so held in *Matter of Fuller*, 262 U.S. 91 [43 S.Ct. 496, 67 L.Ed. 881] .... (Emphasis added.)
*Dier v. Banton*, 262 U.S. at 150, 43 S.Ct. at 534.

4. Notwithstanding the Court's decisions in *Harris, Johnson, Fuller,* and *Dier,* some commentators argue that § 70a of the former Bankruptcy Act is constitutionally suspect. See Ashe, *Bankrupt's Immunity Revisited: A New Approach to the Fifth Amendment Protections,* 74 Com.L.J. 8 (1969).

5. In discussing the scope of the privilege against self-incrimination the editors of *Collier* state:
> The privilege may be claimed with respect to the examination of books, papers and records containing incriminating evidence but this will not excuse their production. They must be produced and if the court finds that they contain incriminating evidence may issue an order to protect the witness. The books of a debtor that are in the trustee's possession are not "testimony" and their use against the debtor is not prohibited. While a debtor cannot be compelled to produce books rightfully in his possession for use in criminal proceeding involving him, his constitutional immunity from the use of his books ceases as soon as they are duly taken out of the debtor's possession and control, either by an order

The debtor insists otherwise, contending that the Fifth Amendment analysis in *Harris* and its progeny is infirm under current constitutional standards.

### III

Initially, the debtor asserts that the immunity provisions of the Bankruptcy Code and the former Act materially differ. When the Supreme Court decided *Harris, Johnson,* and *Fuller,* § 7 of the Bankruptcy Act provided in relevant part:

*Duties of bankrupts.*—a.   The bankrupt shall ·

.        .        .        .        .

(9) when present at the first meeting of his creditors, and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate; but no testimony given by him shall be offered in evidence against him in any criminal proceeding . . . .

In 1938, the blanket grant of immunity for testimony in the bankruptcy court was qualified—testimony proffered by the bankrupt in hearings on objections to his discharge could be introduced in subsequent criminal proceedings.  Section 7 was further amended in 1970 by § 207 of the Organized Crime Control Act of 1970 [6] to extend immunity beyond the mere testimony to any evidence "directly or indirectly derived from such testimony." [7]   This amendment afforded "testimonial" immunity coextensive with the Fifth Amendment privilege against self-incrimination.  *Kasti-*

directing their delivery or by the passing of the books to the trustee under section 521(3). It is a necessary corollary of this doctrine, therefore, that the debtor has no right to delay the transfer of his books to the trustee on the ground that they will incriminate him.  (Footnotes omitted.)

2 *Collier on Bankruptcy* ¶ 344.03[2] (15th ed. 1983).

*gar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Goldberg v. Weiner,* 480 F.2d 1067 (9th Cir.1973).  Although automatic, immunity under the Bankruptcy Act was limited to oral testimony.  *See Ensign v. Pennsylvania,* 227 U.S. 592, 600, 33 S.Ct. 321, 323, 57 L.Ed. 658 (1913).

Differing substantially from its counterpart under the former Act, Bankruptcy Code § 344 provides: "Immunity for persons required to submit to examination, to testify, *or to provide information* in a case under this title may be granted under part V of title 18."  (Emphasis added.)  Section 6002 of Title 18 of the United States Code enacts in part:

*Immunity generally*

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

.        .        .        .        .

(3) and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony *or other information* compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.  (Emphasis added.)

**6.**  Pub.L. No. 91–452, 91st Cong., 2d Sess. (1970), 18 U.S.C. § 6002.

**7.**  The amendment established a use and derivative use immunity standard, which is to be distinguished from transactional immunity.  See *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

"Other information" includes any book, paper, document, record, recording, or other material. 18 U.S.C.A. § 6001(2) (Supp. 1983). In the case of an individual testifying in a court of the United States, an order granting immunity may be issued only upon the request of the United States attorney for the judicial district in which the proceeding is or may be held. 18 U.S.C.A. § 6003(a) (Supp.1983). Thus, testimonial immunity under the Bankruptcy Code is no longer automatic. However, the scope of immunity has apparently been expanded to include recorded information. According to the debtor, this expansion manifests a congressional intent to extend immunity to a debtor compelled to surrender books and records relative to property of the estate, in contra-distinction to the immunity available under section 7 of the former Act.[8] Hence, the debtor contends that absent a grant of immunity he may assert his constitutional privilege against self-incrimination and decline to turn over any incriminating books and records.

Citing *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the debtor further contends that the mere act of producing books and records for turnover to the trustee is a testimonial communication. At issue in *Fisher* was whether IRS summonses directed to attorneys in two different cases could be enforced over the objections that the documents sought were constitutionally immune from production. The documents in question (accountants' workpapers and analyses pertaining to the taxpayers' incomes and expenses, correspondence between accountant and client, and certain copies of income tax returns) were delivered by the taxpayers to their respective attorneys for the purpose of obtaining legal advice. Consequently, because of the attorney-client privilege, if the documents sought were unobtainable in the hands of the taxpayers, they were likewise unobtainable from the attorneys. Observing that the self-incrimination clause of the Fifth Amendment is applicable only when a party is compelled to make a testimonial communication that is incriminating, the majority of the Court believed that the act of producing the requested documents

8. See however Kurland, *A Debtor's Prism: Immunity For Bankrupts Under The Bankruptcy Reform Act of 1978*, 55 Am.Bankr.L.J. 177 (1981).

A literal interpretation of the Code would indicate that a bankrupt's books and records are now covered by statutory bankruptcy immunity.

Such an interpretation is troublesome for a number of reasons. Without specific mention in the legislative history, extending immunity to books and records would legislatively overrule a series of important bankruptcy cases [*Harris, Johnson,* and *Fuller*] that held that a bankrupt's books and records could be introduced into evidence against him at a subsequent criminal proceeding. Such an extension would affect the establishment of independent sources of evidence and disrupt the policy favoring full disclosure in bankruptcy proceedings. Congress, in enacting the Code, realized that providing only discretionary immunity would result in some bankrupts not having to testify at their bankruptcy proceedings, thereby diluting to some degree the effectiveness of the bankruptcy court in achieving full disclosure of all relevant facts necessary for the proper administration of the estate. However, if the discretionary immunity is found to extend to the books and records of the bankrupt, the policy of full disclosure will be diluted even further, to an extent not even anticipated by Congress.

A grant of such immunity would eliminate what had been legitimate independent sources of evidence. This would make the establishment of independent sources of evidence for use at a subsequent criminal prosecution much more difficult under the Code than it was under the Act. Accordingly, the possibility of a United States attorney requesting such extensive immunity, and, in effect, crippling his own criminal prosecution, would be remote. This result, in turn, would destroy the equitable balance that existed under the Act between full disclosure at bankruptcy hearings and preserving evidence for subsequent criminal prosecutions.

To avoid this result and salvage the Code immunity provisions, section 344 should be interpreted to exclude immunity for books and records .... (Footnotes omitted.)
*Id.* at 211–12.
Although the concerns expressed in this article are very significant, the language of both Bankruptcy Code § 344 and 18 U.S.C.A. § 6002 (Supp.1983) is unambiguous. Recorded information is within the scope of immunity available under part V of Title 18 of the United States Code, incorporated by reference in Bankruptcy Code § 344.

would not involve any testimonial self-incrimination. In the view of the majority, implicit admission of the existence and possession of the documents could not "rise to the level of testimony within the protection of the Fifth Amendment." [9] *Id.* at 411, 96 S.Ct. at 1581. The fact of the documents' existence and possession thereof by the taxpayers posed no threat of incrimination to them. The penultimate paragraph of the Court's opinion recites:

Whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; *for the papers demanded here are not his "private papers,"* see *Boyd v. United States, supra,* 116 U.S. [616] at 634–635, 6 S.Ct. [524] at 534, 29 L.Ed. [746] at 752. We do hold that compliance with a summons directing the taxpayer to produce the accountant's documents involved in these cases would involve no incriminating testimony within the protection of the Fifth Amendment. (Emphasis added.)

*Fisher v. United States,* 425 U.S. at 414, 96 S.Ct. at 1582.

Writing for the majority in *Fisher,* Justice White did observe that "[t]he act of producing evidence in response to a subpoena ... has communicative aspects of its own, wholly aside from the contents of the papers produced." *Fisher,* 425 U.S. at 410, 96 S.Ct. at 1581. The debtor maintains that his act of producing one category of documents involved in the instant case would be self-incriminating.[10]

## IV

To assure the protection that it is designed to secure, the Fifth Amendment privilege against self-incrimination must be broadly construed. *Arndstein v. McCarthy,* 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 128 (1920). Generally, the privilege extends to any testimony that would furnish a link in the chain of evidence necessary to the prosecution. *Blau v. United States,* 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950). The three requisites to the applicability of the privilege are: (1) compulsion, (2) testimonial communication, and (3) the testimonial communication must be self-incriminating. Furthermore, with respect to documents, possession or constructive possession by the person asserting the privilege is necessary before the privilege may be invoked. *United States v. Hershenow,* 680 F.2d 847 (1st Cir.1982).

Clearly, the precedent established by *Harris* and the Court's recognition in *Fisher* that the mere act of producing documents is communicative, and thus potentially within the scope of Fifth Amendment protection against self-incrimination, is incongruous. However, the immunity available under the Bankruptcy Code, although no longer automatic, has been unambiguously expanded to encompass recorded information.[11] This expansion suggests a congressional recognition, unsupported however by legislative history, that compelled surrender of an individual debtor's books

---

**9.** Although concurring in the judgment because of the business as opposed to personal nature of the papers and the prior access of the taxpayers' accountants, Justice Brennan disagreed that production of the documents was not "testimonial." *Fisher v. United States,* 425 U.S. at 428, 96 S.Ct. at 1589 (1976) (Brennan, J., concurring).

**10.** During the December 21, 1983, hearing on the trustee's motion to compel a turnover of recorded information, Mr. Sanders represented to the court that the debtor has possession of three categories of records: (1) records which do not contain incriminating information, (2) records not containing incriminating information but whose production would be self-incriminating, and (3) records whose contents include incriminating evidence.

[B]y turning all of his documents over to the Trustee, the Debtor will admit he is connected with certain business transactions and enterprises; that he has documents in his custody relating to them; and that such records actually exist. The actual existence of certain documents has never been disclosed and merely turning them over to the Trustee would add a great deal to the sum total of the government's information.

Debtor's Memorandum in Opposition to Trustee's Motion to Require Debtor to Surrender Books and Records at 2–3.

**11.** See note 8, and accompanying text, *supra.*

and records may be violative of his constitutional rights. Also, the express language of the Fifth Amendment self-incrimination clause—"nor shall be compelled ... to be a witness against himself"—constrains this court to conclude that the debtor enjoys a constitutional privilege superseding his obligation, pursuant to Code § 521(3), to turn over certain recorded information pertaining to property of the estate.[12] *See Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974); *Boyd v. United States*, 116 U.S. 616, 631–32, 6 S.Ct. 524, 532–33, 29 L.Ed. 746 (1886) (Fifth Amendment creates zone of privacy absolutely protecting documents from production while in the hands of the owner); *Matter of Grand Jury Empanelled March 19, 1980*, 680 F.2d 327 (3rd Cir.1982), *cert. granted sub nom. United States v. Doe*, —— U.S. ——, 103 S.Ct. 1890, 77 L.Ed.2d 281 (1983) (Fifth Amendment privilege against self-incrimination protects sole proprietor from compulsory production of business-related records).[13] Consequently, the debtor may not be compelled by this court to surrender *his personal* books and records relating to property of the estate if (i) their contents are self-incriminatory, or (ii) the act of producing those records might tend to incriminate him. *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976); *United States v. Schlansky*, 709 F.2d 1079, 1084 (6th Cir.1983), *appeal pending*. Work papers or similar documents known by the trustee to exist and prepared by the debtor's accountants or other third parties which may be authenticated by someone other than the debtor or his attorneys, insofar as the attorney-client privilege may be apposite, must be surrendered.

Though a summons to a taxpayer to produce his accountant's work papers involves compulsion, it does not require testimony by the taxpayer or compel him "to restate, repeat, or affirm the truth of the contents of the documents sought." The fact that the documents might be incriminating on their face is irrelevant; unless some testimonial act by the taxpayer is compelled by the summons, the Fifth Amendment privilege against self-incrimination offers no basis for refusing to comply with a summons. The magistrate correctly concluded that the taxpayer had no valid reason for refusing to produce the accountant's work papers.

In *Fisher* the Supreme Court did not reach the question whether the Fifth Amendment would shield a taxpayer from producing his own tax records in his possession. It is a question of fact in each case whether a compelled testimonial communication is involved in responding to a summons or subpoena *duces tecum. Where nothing more is involved than surrendering materials already in existence, fully identified and requiring no authentication by the taxpayer, testimony is not involved.* (Emphasis added and citations omitted.)

*United States v. Schlansky*, 709 F.2d at 1082.

■ Additionally, the noncorporate or nonpartnership records, if any, within the scope of the "required records exception" must likewise be turned over to the trustee. *In re Grand Jury Proceedings* (McCoy and Sussman), 601 F.2d 162 (5th Cir.1979) (individual may invoke privilege against self-incrimination unless required records have "public aspects"); *In re Grand Jury Subpoena to Mid-City Realty Co.*, 497 F.2d 218 (6th Cir.1974), *cert. denied sub nom. Ficorelli v. United States*, 419 U.S. 1009, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974) (president of sole proprietorship real estate brokerage company compelled to produce *records required to be kept* under state law).

■ The privilege against self-incrimination is not available to a corporation.

---

12. *Contra In re Einhorn*, 33 B.R. 665 (Bkrtcy.E.D.N.Y.1983).

13. *But cf. Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (Fifth Amendment proscription against self-incrimination not offended by introduction into evidence of business records seized pursuant to search warrant due to absence of compulsion element).

*United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). Corporate records are not immune from production on the basis that they contain information incriminating either the custodian of the records or any officer of the corporation. *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *United States v. Held,* 435 F.2d 1361 (6th Cir.1970), *cert. denied,* 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 545 (1971); *In re Candor Diamond Corp.,* 21 B.R. 147 (Bkrtcy.S.D.N.Y.1982).[14]

█ The reason underlying the restriction of this constitutional privilege to natural individuals acting in their own private capacity is clear. The scope and nature of the economic activities of incorporated ... organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective. The greater portion of evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible. The framers of the constitutional guarantee against compulsory self-disclosure, who were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations. (Citations omitted.)

*United States v. White,* 322 U.S. at 700, 64 S.Ct. at 1252.

█ The books and records of *any* corporation relating to property of the estate and in either the actual or constructive possession of the debtor must be turned over to the trustee. Moreover, similar books and records of *any* noncorporate collective entity, including partnerships, in the actual or constructive possession of the debtor must also be surrendered to the trustee. *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). The act of producing these records (held in a representative capacity) is outside the protective scope of the Fifth Amendment privilege against self-incrimination. *In re Grand Jury Empanelled March 8, 1983 (Butcher),* 722 F.2d 294 (6th Cir.1983).

## V

In conclusion, the court notes the remarks of a noted bankruptcy scholar published almost twenty years ago.

A question was raised ... regarding the effect of the Fifth Amendment upon the administration of a bankrupt estate. If carried to its ultimate extreme, would not the assertion of the privilege cause a lot of havoc with bankruptcy investigations? The answer clearly is in the affirmative but it is doubted that this would deter the Supreme Court.

In all situations of examinations, including ... the filing of the necessary papers by the bankrupt, it is quite conceivable that the bankrupt eventually will be fully entitled to his privilege not to incriminate himself. But if one is worried about bankruptcy investigations, hampering the trustee in the performance of his duties, depriving creditors of some measure of recovery, one must consider at the same time that a bankruptcy proceeding is only a part, and a small part of the basic issue. It is not outside of the whole social realm of this country. The Fifth Amendment has been construed to give very broad protection to alleged violators of the criminal law; is a bankruptcy proceeding, or the rights of the trustee and creditors, any more important than the rights of citizens gener-

---

**14.** Not even the corporate records of a corporation wholly-owned by a grand jury witness asserting the privilege and his wife are immune from production. *United States v. Lococo,* 450 F.2d 1196, 1199 (9th Cir.1971), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972).

**796**

ally to be protected from criminal offenses? If in a criminal proceeding it is necessary for the law enforcement officers to uncover independent evidence to sustain a conviction and for the most part may not use an accused's own words, how can one justify a different approach in a mere bankruptcy proceeding? No doubt differences exist, but it is unlikely that they would force a different result.

One area in which the law may remain unchanged involves use of a bankrupt's books and records. Because the trustee succeeds to the bankrupt's title to all of his property, it is likely that even under an expanded application of the Fifth Amendment, he would still be entitled to the books and records and could use whatever information is contained therein. While a bankrupt can refuse to deliver them to the trustee, the same effects of dismissing the petition or denying a discharge should result. Conceivably, however, this result, too, may change in the future. (Footnotes omitted.)

King, *Constitutional Rights and the Bankruptcy Act*, 72 Com.L.J. 315, 317 (1967).

This court believes that a chapter 7 debtor's duty to surrender recorded information pertaining to property of the estate has changed since *Harris* and its progeny were decided by the Supreme Court. The court's belief is founded upon both the congressional revision of immunity available in bankruptcy and the enhanced protection afforded to individuals through the Supreme Court's recognition in *Fisher* that the act of producing documents is testimonially communicative in some cases.