**In re David A. CRABTREE a/k/a West Knoxville Investment Company, Inc., Debtor.**

**Bankruptcy No. 3–83–01116.**

United States Bankruptcy Court, E.D. Tennessee.

April 12, 1984.

See also, Bkrtcy., 37 B.R. 426.

Zusmann, Small, Stamps & White, Samuel J. Zusmann, Jr., Atlanta, Ga., Ritchie,

---

Chadwell & Eldridge, P.C., Robert W. Ritchie, Knoxville, Tenn., for debtor.

Cadwalader, Wickersham & Taft, Mark C. Ellenberg, Washington, D.C., Walker & Walker, P.C., John A. Walker, Jr., Mary C. Walker, Knoxville, Tenn., for trustee.

MEMORANDUM ON DEBTOR'S MOTION FOR DETERMINATION OF HIS COMPLIANCE WITH ORDER NO. 67

CLIVE W. BARE, Bankruptcy Judge.

The question before the court is whether the duty, pursuant to 11 U.S.C.A. § 521(3) (1979), of an involuntary debtor to surrender property of the estate is superseded by his Fifth Amendment claim of privilege against self-incrimination.[1]

I

Pursuant to 11 U.S.C.A. § 303(h) (1979), an order for relief under chapter 7 was entered against the debtor on August 22, 1983. A motion was filed by the trustee on January 13, 1984, to hold the debtor in contempt for failure to: (1) turn over property of the estate, including recorded information; (2) provide required information about his financial affairs; and (3) submit to an examination by his creditors and the trustee. Further, the trustee asserted that the debtor had concealed assets of the estate. The proof adduced at a hearing on February 9, 1984, conclusively established that the debtor had failed to turn over property of the estate. At the conclusion of the February 9th hearing, the court entered Order No. 49, requiring the debtor to forthwith surrender all recorded information relating to property of the estate not privileged from production. Also, the court entered Order No. 50, requiring the debtor to turn over to the trustee all property of the estate within forty-eight (48) hours. Further, each order directed the debtor to file written certification of his compliance.

Although the debtor turned over numerous assets and a substantial amount of recorded information between February 11 and February 13, 1984, the trustee filed a second motion for contempt asserting that numerous other assets of the estate had neither been accounted for nor turned over by the debtor. On March 14, 1984, subsequent to both the hearing on this second motion and the March 8th return of a four-count indictment charging the debtor with concealment of assets of the estate,[2] the court filed a memorandum concluding that the debtor had failed to comply with his duties under Bankruptcy Code § 521 and Orders Nos. 49 and 50; that his noncompliance was contemptuous; and that this court has authority to punish civil contempt. More particularly, the court found that, although nearly six (6) months had elapsed since entry of the order for relief, the debtor had failed to surrender significant assets; that the debtor had violated Order No. 49 by failing to surrender or account for nonprivileged records relating to property of the estate; that the debtor's equivocal certification[3] pertaining to turnover of property of the estate failed to comply with the court's explicit order; and that the debtor had failed to properly assert his claim of privilege against self-incrimination in his statement of financial affairs and schedules.

---

1. Although the debtor asserts that his constitutional rights under the First, Fourth, Sixth, and Fourteenth Amendments are also relevant, his claim of privilege is fundamentally based on the Fifth Amendment privilege against self-incrimination.

2. See 18 U.S.C.A. § 152 (Supp.1983).

3. The "Statement of Debtor," filed on February 14, 1984, recites in part:
   (1) Since [February 9, 1984, at 5:15 p.m.] ... I have made a diligent effort to marshal and assemble all property of the estate and to turn over or tender to the Trustee all of such property.
   (2) To the best of my ability, within the time limitations stated in said order, I have complied with said order.
   (3) By letter through my counsel, I have advised the Trustee of certain property of the estate of which I have knowledge but which I have been unable to locate and deliver. I will continue to endeavor to locate such property and deliver the same to the Trustee.

Pursuant to these findings, and concurrently with the filing of its memorandum, the court entered Order No. 67, requiring the debtor to: (1) turn over to the trustee, or account for, all property of the estate; (2) certify unconditionally and without equivocation, within five (5) days, that he has done so; and (3) file, also within five (5) days, a second statement of his financial affairs and schedules asserting the claim of privilege against self-incrimination on an item-by-item basis. The order further provides that upon the debtor's failure to comply therewith he shall be fined $1,000.00 daily for a period not to exceed ten (10) days. Thereafter, if he still has not complied, he is ordered to surrender himself to the United States Marshal and remain in custody until such time as he purges himself of civil contempt of his duties under Bankruptcy Code § 521 and the orders of this court. An order denying debtor's motion to stay the effect of Order No. 67 pending appeal was entered on March 20, 1984.[4] However, the court did extend the time for filing the debtor's certification and his statement of financial affairs and schedules until March 22, 1984.

The debtor's certification pertaining to turnover of property of the estate, filed on March 22, 1984, recites in part:

I have tendered to the Trustee all property which is "property of the estate" in my possession; except for such property, I have surrendered to the Trustee all property that it is within my ability to surrender.

To the extent possible, without waiving my constitutional rights, I have accounted to the Trustee for property referred to in the Court's Memorandum on Trustee's Motions for Contempt, a copy of my accounting being attached hereto.

I have this day filed with the Court a Statement of Affairs and Schedules of Assets and Liabilities. Therein I have asserted constitutional rights. To the extent I am able to further respond to the questions therein without waiving my constitutional rights I am prepared to do so; by so doing I would be able to further account to the Trustee.

On March 29, 1984, the district court entered an order affirming the findings and conclusions of this court that the debtor is guilty of civil contempt. Less than one hour after the entry of the district court order, Samuel J. Zusmann, Jr., and Robert W. Ritchie, attorneys for the debtor, appeared before this court and orally moved for a determination that the debtor has complied with Order No. 67. The court deferred decision on the *ore tenus* motion[5] to afford the trustee an opportunity to respond.[6]

## II

The Fifth Amendment to the United States Constitution recites in material part: "No person ... shall be compelled in any criminal case to be a witness against himself ...." U.S. Const. amend. V. The amendment proscribes compulsion of testimony that is self-incriminatory. It protects individuals from self-incriminating disclosures in civil as well as criminal proceedings. *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924); *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

This court has previously considered the impact of the Fifth Amendment privilege against self-incrimination upon a debtor's duty to surrender recorded information relating to property of the estate. See *In re Butcher*, 38 B.R. 785, 11 Bankr.Ct.Dec. 603 (Bkrtcy.E.D.Tenn.1984) (debtor may not be compelled to surrender personal books and records relating to property of the estate if either their contents are self-incriminatory

---

**4.** The debtor's notice of appeal to the district court of Order No. 67 was filed on March 19, 1984.

**5.** Debtor's written motion for determination of compliance was filed on March 30, 1984.

**6.** The court adjourned the hearing until April 2, 1984. Although the parties appeared at the appointed time, no action was taken on the debtor's motion due to the expiration on March 31, 1984, of the emergency Rule for the Administration of the Bankruptcy Court.

or the act of producing them might be incriminating).[7] Though involving books and records, as opposed to assets, certain United States Supreme Court decisions discussed in *Butcher* warrant consideration in deciding the issue before the court.

*In re Harris,* 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 73 (1911), involved a district court order compelling the bankrupt to deliver his books of account to his receiver. Under the terms of the district court order, the receiver's use of the records was restricted to purposes attendant to the administration of the bankrupt's estate. Additionally, in the event of a subpoena seeking production of the books, the receiver was required to notify the bankrupt to afford him the opportunity to assert any claim of constitutional privilege. Contending that the books contained incriminating information, the bankrupt challenged the district court order on Fifth Amendment grounds. In an opinion upholding the order, Justice Holmes wrote:

> If the order to the bankrupt, standing alone, infringed his constitutional rights, it might be true that the provisions intended to save them would be inadequate, and that nothing short of statutory immunity would suffice. *But no constitutional rights are touched. The question is not of testimony, but of surrender,*—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but *of compelling him to yield possession of property that he no longer is entitled to keep.* If a trustee had been appointed, the title to the books would have vested in him by the express terms of § 70, and the bankrupt could not have withheld possession of what he no longer owned, on the ground that otherwise he might be punished. (Emphasis added.)

*In re Harris,* 221 U.S. at 279, 31 S.Ct. at 558.

Two years after its decision in *Harris,* the Court considered the issue whether a bankrupt's books and records are admissible as evidence in a criminal prosecution for concealment of money from the bankruptcy trustee. The opinion of the Court, also authored by Justice Holmes, recites in apposite part:

> It is true that the transfer of the books may have been against the defendant's will, but it is compelled by the law as a necessary incident to the distribution of his property, not in order to obtain criminal evidence against him. *Of course, a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime.* (Emphasis added.)

*Johnson v. United States,* 228 U.S. 457, 458–59, 33 S.Ct. 572, 57 L.Ed. 919 (1913).

*In re Fuller,* 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923), involved an involuntary petition against two individuals and their partnership. Upon his appointment, the receiver immediately demanded the books and records of both the partnership and the individual partners. Contending that the books and records sought by the receiver might tend to incriminate them, the bankrupts refused to surrender the records unless the receiver agreed not to release them to any district attorney. An agreement to this effect was reached. When a trustee in bankruptcy was appointed, the bankrupts demanded return by the receiver of the records previously surrendered. However, the referee in bankruptcy ordered the receiver to deliver the same records to the bankruptcy trustee. With the exception of certain records previously returned by the receiver to the attorneys for the bankrupts, all of the bankrupts' records were delivered to the trustee. On the date of delivery a subpoena, obtained by the district attorney, requesting the production of the bankrupts' records was served on their trustee. The bankrupts and their attorneys were also ordered by the bankruptcy court to turn over to the trustee the records redelivered to them by the receiver. One of the bankrupts, Fuller, under an indictment arising out of the bankrupts' business af-

---

**7.** This decision has been appealed directly to the Sixth Circuit Court of Appeals pursuant to the parties' agreement. See 28 U.S.C.A. § 1293(b) (Supp.1983).

**730**

fairs, applied for a stay of the turnover orders. Denying Fuller's application, the Court stated:

> A man who becomes a bankrupt, or who is brought into a bankruptcy court, has no right to delay the legal transfer of the possession and title of any of his property to the officers appointed by law for its custody or for its disposition, on the ground that the transfer of such property *will carry with it incriminating evidence against him.* His property and its possession pass from him by operation and due proceedings of law, and, when control and possession have passed from him, he has no constitutional right to prevent its use for any legitimate purpose. *His privilege secured to him by the Fourth and Fifth Amendments* to the Constitution *is that of refusing himself to produce, as incriminating evidence against· him, anything which he owns or has in his possession and control; but his privilege in respect to what was his and in his custody ceases on a transfer of the control and possession which takes place by legal proceedings and in pursuance of the rights of others,* even though such transfer may bring the property into the ownership or control of one properly subject to subpoena duces tecum. (Emphasis added.)

*In re Fuller,* 262 U.S. 91, 93–94, 43 S.Ct. 496, 497–97 (1923).

In *McCarthy v. Arndstein,* 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924), the Court held that the privilege against self-incrimination extends to the examination of a bankrupt for the purpose of obtaining possession of property of the estate. Because such an examination involved testimony, the bankrupt, "like any other witness,"

could assert the constitutional privilege. *Id.* at 42, 45 S.Ct. at 17. Citing *Harris, Johnson,* and *Fuller,* the Court observed that the decisions in those cases rest upon a different principle.

> The law requires a bankrupt to surrender his property. The books and papers of a business are a part of the bankrupt estate. Section 70a(1) being Comp.St. § 9654. *To permit him to retain possession, because surrender might involve disclosure of a crime, would destroy a property right.* The *constitutional privilege* relates to the adjective law. It *does not relieve one from compliance with the substantive obligation to surrender property.*

*McCarthy v. Arndstein,* 266 U.S. at 41, 45 S.Ct. at 17.

*Harris* and its progeny establish a clear precedent: in cases governed by the Bankruptcy Act of 1898, the Fifth Amendment privilege against self-incrimination does not excuse a bankrupt from surrendering to his trustee books and records relating to property of the estate, even though they contain incriminating matter. *A fortiori* a bankrupt could not refuse to surrender assets of the estate.

As noted in *Butcher,* an incongruity exists between the constitutional analysis in *Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976) (act of producing evidence in response to a subpoena has communicative aspect wholly aside from contents of documents produced), and the precedent established by *Harris* and its progeny. This incongruity and, more significantly, the unambiguous broadening of immunity in the Bankruptcy Code to include recorded information, 11 U.S. C.A. § 344 (1979),[8] previously persuaded this court to conclude that a "debtor enjoys

**8.** Bankruptcy Code § 344 enacts: "Immunity for persons required to submit to examination, to testify, or to provide information in a case under this title [11] may be granted under part V of title 18."

Within part V of title 18, section 6002 recites in part:

*Immunity generally*

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to tes-

tify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

.          .          .          .          .

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no

a constitutional privilege superseding his obligation, pursuant to Code § 521(3), to turn over certain recorded information pertaining to property of the estate." *In re Butcher*, 38 B.R. 785, 11 Bankr.Ct.Dec. (CRR) at 608.[9]

■ However, the issue presently before the court is quite different from the question in *Butcher*, and the reasons for the conclusion reached in *Butcher* are inapposite herein. Whereas recorded information is clearly "testimonial," the turnover of property of the estate, exclusive of recorded information, does *not* involve testimony. See *Fisher v. United States*, 425 U.S. at 411, 96 S.Ct. at 1581 (doubtful that implicit admission of existence and possession of papers is testimony within the protection of the Fifth Amendment). The turnover of assets is incidentally communicative, involving a tacit representation that the assets are property of the estate. Compulsion is obviously involved; a self-incriminatory link may be. Nonetheless, because the turnover of property of the estate, exclusive of recorded information, does not compel testimony on his part, the debtor may not decline to surrender assets of the estate on the basis of the privilege against self-incrimination. The debtor's obligation to surrender his assets is outside the protective scope of the Fifth Amendment. As noted in *Harris* by Justice Holmes, "[N]o constitutional rights are touched," *In re Harris*, 221 U.S. at 279, 31 S.Ct. at 558, as a consequence of the compelled surrender of the property of a debtor in bankruptcy.[10]

Although ample support is found in the language of *Harris, Johnson, Fuller,* and *Arndstein*, the court's holding is also analogously supported by *United States v. Sullivan*, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed.

1037 (1927). The defendant in *Sullivan* was convicted of failure to file an income tax return. A circuit court of appeals reversed the conviction, holding that the Fifth Amendment excused defendant, whose income was derived from illicit sales of liquor, from filing a tax return. The Supreme Court reversed:

> As the defendant's income was taxed, the statute of course required a return.... In the decision that this was contrary to the Constitution we are of [the] opinion that the protection of the Fifth Amendment was pressed too far. If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return but could not on that account refuse to make any return at all.... It would be an extreme if not an extravagant application of the Fifth Amendment to say that it authorized a man to refuse to state the amount of his income because it had been made in crime.

*United States v. Sullivan*, 274 U.S. at 263–64, 47 S.Ct. at 607–07.

Likewise, it would be an extreme, impragmatic, and unreasonable extension of the Fifth Amendment to excuse a debtor from his obligation, legal and moral, to turn over assets of the estate on the theory that compelling surrender violates the privilege against self-incrimination.

### III

The debtor's certification of his compliance with Order No. 67 does not include an unequivocal, unqualified representation that he has surrendered to the trustee all of the property of the estate, exclusive of privileged recorded information. Indeed,

---

testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order. Hence, although testimonial immunity is no longer automatic under the Bankruptcy Code, the immunity available has apparently been expanded to include recorded information. See however Kurland, *A Debtor's Prism: Immunity*

*for Bankrupts under the Bankruptcy Reform Act of 1978,* 55 Am.Bankr.L.J. 177, 211–12 (1981).

**9.** See note 7, *supra*.

**10.** It is appropriate to limit the constitutional privilege against self-incrimination "to its historic function of protecting ... [an] individual from compulsory incrimination through his own testimony or personal records." *United States v. White,* 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944).

the certification attached to the purported accounting clearly suggests that some assets have *not* been surrendered. (See Appendix-Certification of debtor filed March 22, 1984).

Whether the debtor has turned over all property of the estate, with the exception of privileged recorded information, is within *his* exclusive knowledge. Although he may not be compelled to disclose privileged information pertaining to property of the estate,[11] he is not otherwise excused from surrendering to the trustee any and all property of the estate.[12] Assets may not be retained on the theory that their surrender will incriminate the debtor.

Even though the court entered a turnover order more than two months ago, the debtor has not unequivocally certified, as required by Order No. 67, that he has turned over to the trustee all property of the estate.[13] His certifications of compliance with Orders Nos. 50 and 67 are equivocal and qualified. Because he has failed to comply with Order No. 67, the debtor remains in civil contempt of his duties under Code § 521 and the orders of this court. Hence, pursuant to the provisions of Order No. 67, a fine in the amount of $10,000.00, payable to the Treasury of the United States from funds which are not property of the estate, shall be imposed upon the debtor. Furthermore, the debtor must surrender himself to the custody of the United States Marshal for the Eastern District of Tennessee for commitment in an appropriate federal facility until such time as he purges himself of civil contempt by: (1) surrendering all property of the estate within his control, custody, or possession, actual or constructive, with the exception of any privileged recorded information relating to property of the estate, and (2)

certifying without equivocation or qualification that he has done so.

In conclusion, the court notes its agreement with the views expressed in *In re Epstein,* 206 F. 568 (E.D.Pa.1913), *aff'd, Epstein v. Steinfeld,* 210 F. 236 (3rd Cir. 1914), pertaining to the method of dealing with a bankrupt's failure to comply with a turnover order:

> [T]he bankrupt may therefore be subjected to the usual pressure that follows willful disobedience of a lawful command, namely, the inconvenience of being restrained of his liberty. No doubt this may be unpleasant; it is intended to be unpleasant, but I see no reason why the proceeding should be condemned, as if it interfered with the liberty of the citizen without sufficient reason or excuse .... *Actual or virtual imprisonment for debt has ceased, but imprisonment to compel obedience to a lawful judicial order (if it appear that obedience is being willfully refused) has not yet ceased, and ought not to cease, unless it should be thought expedient to destroy all respect for the courts by stripping them of power to enforce their lawful decrees.* (Emphasis added.)

*In re Epstein,* 206 F. 569–70.

### APPENDIX

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE EASTERN DISTRICT OF TENNESSEE

IN RE: DAVID A. CRABTREE, Debtor

Case No. 3–83–01116

### CERTIFICATION

The undersigned files this certificate in an effort to comply with Order No. 67.

---

**11.** See *In re Butcher,* 38 B.R. 785, 11 Bankr.Ct. Dec. (CRR) 603 (Bkrtcy.E.D.Tenn.1984).

**12.** Of course, the debtor may not be compelled to turn over assets over which he has no control whatsoever which may nonetheless be property of the estate recoverable by the trustee. For instance, property of the estate includes, "Any interest in property that the trustee recovers under [Bankruptcy Code] Section 543, 550, 553, or 723 ...." 11 U.S.C.A. § 541(3) (1979).

**13.** "A turnover order must be regarded as a real and serious step in the bankruptcy proceedings, and should be promptly followed by commitment unless the bankrupt can show a change of situation after the turnover order relieving him from compliance." *Oriel v. Russell,* 278 U.S. 358, 364, 49 S.Ct. 173, 174, 73 L.Ed. 419 (1929).

I have tendered to the Trustee all property which is "property of the estate" in my possession; except for such property, I have surrendered to the Trustee all property that it is within my ability to surrender.

To the extent possible, without waiving my constitutional rights, I have accounted to the Trustee for property referred to in the Court's Memorandum on Trustee's Motions for Contempt, a copy of my accounting being attached hereto.

I have this day filed with the Court a Statement of Affairs and Schedules of Assets and Liabilities. Therein I have asserted constitutional rights. To the extent I am able to further respond to the questions therein without waiving my constitutional rights I am prepared to do so; by so doing I would be able to further account to the Trustee.

I have been and I am prepared to assist the Trustee in every way possible in the performance of his duties to the extent I can do so without waiving my constitutional rights.

This 22nd day of March, 1984.

/s/David A. Crabtree
David A. Crabtree
March 22, 1984

Mr. Francis W. Norwood
c/o Mr. John A. Walker
Walker & Walker, P.C.
First Tennessee Bank Building
Knoxville, Tennessee

Dear Mr. Norwood:

I have this day filed Schedules of Assets and Liabilities with the Bankruptcy Court.

Certain of the items listed in Schedule B–2(e) have not been surrendered to you, specifically:

wearing apparel;

one class ring; and

miscellaneous cuff links, tie pins.

These items are in my possession and if you desire them to be surrendered to you, please advise when and where to do so.

In Schedule B–2(i) I have listed approximately 20 bales of hay. These are at the farm owned by the David A. Crabtree Irrevocable Trust. If you desire to take possession of this property, please advise where, when, and how you would like to accomplish this.

Judge Bare, in his Memorandum on Trustee's Motions for Contempt of March 14, 1983, makes reference to various items of property which are claimed by you as Trustee. Some of these have been surrendered to you.

As to the "marketable securities" (p. 10), I believe Mr. Wilson S. Ritchie was in error in stating that any were with "brokerage houses for sale." All "marketable securities" which I owned at the time the bankruptcy case commenced have been surrendered to you, with the exception of certain corporate bonds held in my "IRA account" at Merrill Lynch, the identity and location of which have been previously disclosed to you.

All furnishings at the Pembroke which were not present at the time you took possession (p. 11) have been delivered to you, with the exception of property belonging to others.

As to funds on deposit at the Sun Bank of Volusia County (p. 14) it is my understanding that the account has been "frozen," and that the funds are still there. However, I deny that any funds in that account are "property of the estate."

With regard to records of various entities (p. 16) I have no records with regard to any of them; all records in my possession have previously been surrendered to you.

The only records retained by me are those so provided for in Judge Bare's Order of February 9, 1984, paragraph (5).

*Reference is made (pps. 11–12) to $300,-000. This item is the subject of an indictment, No. CR–3–84–10, United States District Court, Eastern District of Tennessee. Therefore, I respectfully decline to account for said property* on the ground that to do so would violate my rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States of America and my corresponding rights under the Constitution of

the State of Tennessee, as I believe the accounting would relate to the subject of the aforesaid indictment. (Emphasis added.)

At a hearing on March 8, 1984, in CR–3–84–10, an assistant United States attorney stated that I was the "target of banking violations." (Transcript, p. 11, CR–3–84–10) *I have also appeared within the past year before a United States Grand Jury with regard to my financial transactions; and I believe I may be the subject of further indictments. Therefore, I respectfully decline to "account" for any other property or items referred to in the aforesaid Memorandum,* and I respectfully decline to "account" as to those matters as to which I have asserted my constitutional rights in the Schedules and Statement of Affairs on the ground that to do so would violate my rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States of America and my corresponding rights under the Constitution of the State of Tennessee, as the accounting may relate to the subject of and my defenses to such indictments. (Emphasis added.)

I am willing to account as to said matters to the extent that such accounting would not violate my constitutional rights, provided that the Court holds that to do so does not waive such rights as to the subject matter of such accounting and that I am not required to further account or provide information if such accounting and/or such information may tend to incriminate me. I am advised by counsel that by partially accounting as to said matters I may be held to have waived my constitutional rights not to account in full as to such matters, even though accounting as to the latter may tend to incriminate me.

> Very truly yours,
> /s/David A. Crabtree
> David A. Crabtree