48 B.R. 644 (1985)
In re Diana K.M. DEVEREAUX, Debtor.
In re D & G INTERNATIONAL MARKETING RESEARCH, INCORPORATED, Debtor.
Bankruptcy Nos. 84-3000-INV-LM7, 84-4322-INV-LM7.
United States Bankruptcy Court, S.D. California.
April 26, 1985.
*645 Michael T. Pines, Panther, Pines, McCann & Goldstein, Oceanside, Cal., for debtor.
Gerald Sims, San Diego, Cal., for petitioner.
Harold Taxel, La Jolla, Cal., trustee.

MEMORANDUM OF DECISION
LOUISE DeCARL MALUGEN, Bankruptcy Judge.

I.

FACTS
An involuntary Chapter 7 petition was filed against Diana K.M. Devereaux ("Devereaux") in July 1984. In October 1984, pursuant to a stipulation, an order for relief was entered against the debtor and a trustee appointed.
Devereaux is the subject of a grand jury investigation to determine whether she has committed certain criminal acts, the nature of which have not been revealed to this Court. Devereaux has filed blank schedules and statements of affairs, claiming her Fifth Amendment privilege against self-incrimination. The trustee has moved the Court to order Devereaux to surrender all property of the estate and certify under penalty of perjury that she has done so. Devereaux resists this motion on the grounds that the act of turning over all assets and certifying that she has done so are violative of her Fifth Amendment rights.

II.

ISSUE
Does an order requiring the debtor to turn over property of the estate and certify under penalty of perjury that she has done so, violate her Fifth Amendment privilege against self-incrimination?

III.

ANALYSIS
Devereaux claims that the United States Attorney and the Grand Jury are currently investigating her financial dealings and attempting to determine what monies she received and what monies were disbursed. Devereaux contends that admission of the mere ownership of certain assets at a given point in time would be an incriminating clue when connected up with other evidence, citing the protection extended to "clue" facts in Couselman v. Hitchcock, 142 U.S. 547, 564, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892).
The argument of Devereaux overlooks the reasoning of Justice Holmes in the In re Harris, 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 73 (1911) case where, in overruling a debtor's challenge to a district court order compelling the debtor to deliver his books of account to his receiver, he stated:
"If the order to the bankrupt, standing alone, infringed his constitutional rights, it might be true that the provisions intended to save them would be inadequate and that nothing short of statutory immunity would suffice. But no constitutional rights are touched. The question is not of testimony, but of surrender, not of compelling the bankruptcy to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he no longer is entitled to keep." (emphasis added) 221 U.S. at 279, 31 S.Ct. at 558.
This result was affirmed by the Supreme Court in the case of In re Fuller, 262 U.S. *646 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923). In that case, involuntary debtors, prior to adjudication, turned over certain books and records to a receiver under an agreement that the books and records would not be turned over to the district attorney or the grand jury, because the debtors had claimed that the books would tend to incriminate them. When a trustee in bankruptcy was appointed, the district court judge ordered the receiver to turn over the books and records to the trustee, which, with certain exceptions, was done. The district attorney immediately served a subpoena on the trustee requesting production of the debtors' records. The district judge also ordered the debtors to turn over to the trustee those records redelivered to them by the receiver. In denying a stay of the turnover orders to one of the debtors under indictment, the court stated:
"A man who becomes a bankrupt or who is brought into a bankruptcy court has no right to delay the legal transfer of the possession and title of any of his property to the officers appointed by law for its custody or for its disposition, on the ground that the transfer of such property will carry with it incriminating evidence against him. His duty and its possession pass from him by operation and due proceedings of law, and when control and possession have passed from him, he has no constitutional right to prevent its use for any legitimate purpose. His privilege secured to him by the Fourth and Fifth Amendments to the Constitution is that of refusing himself to produce, as incriminating evidence against him, anything which he owns or has in his possession and control, but his privilege in that respect to what was his and in his custody ceases on a transfer of the control and possession which takes place by legal proceedings and in pursuance of the rights of others, even though such transfer may bring the property into the ownership or control of one properly subject to subpoena duces tecum." (emphasis added) In re Fuller, 262 U.S. 91-93-94, 43 S.Ct. 496, 497-98 (1923).
In this instance, Devereaux is not requested to turn over books, records or other recorded information to her trustee. She is requested to turn over property of the estate which, by reason of the appointment of her trustee, is no longer hers to retain. When faced with a similar request in the matter of In re Crabtree, 39 B.R. 726 (Bkrtcy.E.D.Tenn.1984), the bankruptcy judge declined to extend the protection of Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), cited by Devereaux herein, to the turnover of assets, stating:
"Whereas recorded information is clearly `testimonial,' the turnover of property of the estate, exclusive of recorded information, does not involve testimony. (citations omitted) The turnover of assets is incidentally communicative, involving a tacit representation that the assets are property of the estate. Compulsion is obviously involved; a self-incriminatory link may be. Nonetheless, because the turnover of property of the estate, exclusive of recorded information, does not compel testimony on his part, the debtor may not decline to surrender assets of the estate on the basis of the privilege against self-incrimination. The debtor's obligation to surrender his assets is outside the protective scope of the Fifth Amendment." (at 731)
The bankruptcy judge in the Crabtree case also directed the debtor to certify unconditionally that he had turned over all property of the estate. Devereaux resists so doing, claiming the certification is a "testimonial averment under compulsion of court order which might claim to incriminate Devereaux." Memorandum of Points and Authorities in Opposition to Motion for Surrender of Property of the Estate, p. 10, 1.16-17. Once again, this Court finds the reasoning of Bankruptcy Judge Bare in the Crabtree case persuasive. He observed:
"Whether the debtor has turned over all property of the estate with the exception of privileged recorded information, is within his exclusive knowledge. Although he may not be compelled to disclose *647 privileged information pertaining to property of the estate, he is not otherwise excused from surrendering to the trustee any and all property of the estate. Assets may not be retained on the theory that their surrender will incriminate the debtor." (at 732)
The certification that all property of the estate within Devereaux' control has been turned over to the trustee will presumably be co-extensive with the assets turned over. As she is merely certifying that she has surrendered all of that property which she is no longer entitled to retain, the "testimonial averment" she is being required to make in so doing is likewise outside the protective arm of the Fifth Amendment.
Based on the foregoing, no later than May 15, 1985, Devereaux be and hereby is directed to (1) turn over all property of the estate within her control, custody or possession, actual or constructive, excepting any privileged recorded information relating to the property and, (2) certify unequivocally and without qualification under penalty of perjury that she has done so.