CORNELIA G. KENNEDY, Circuit Judge.
 

 This case involves cross-appeals from an order of the United States Bankruptcy Court for the Eastern District of Tennessee requiring Jacob F. Butcher (debtor) to turn over to John H. Bailey (trustee) some, but not all, of debtor’s records relating to the property of his estate. 38 B.R. 785.
 

 In 1983 debtor was adjudicated a bankrupt, under Chapter 7, in an involuntary proceeding brought pursuant to 11 U.S.C. § 303. Consequently, 11 U.S.C. § 521 required that he “surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate....” Debtor, however, claiming that much of the recorded information might tend to incriminate him, invoked a fifth amendment privilege not to produce certain records. Trustee demanded all the records, arguing that the fifth amendment privilege does not excuse a bankrupt from
 
 *467
 
 surrendering records relating to the property of a bankrupt estate.
 

 The Bankruptcy Court unconditionally ordered debtor to produce all nonpersonal records relating to property of the estate, specifically: records of any corporate or noncorporate collective entity; records having public aspects and which were required by law to be kept; and accountant or other third-party workpapers known by trustee to exist and requiring no authentication by the debtor or his attorneys. The court also ordered debtor to turn over all personal records relating to property of the estate, unless the contents of those records would be incriminating or the act of producing the records would be incriminating. Trustee appeals from the portion of the order which allows debtor to claim a privilege with regard to certain personal records. Debtor appeals from the portion of the order requiring him to turn over nonpersonal records without regard to possible incrimination. Jurisdictional problems require us to dismiss debtor’s appeal. With respect to that portion of the order from which trustee appeals, we affirm in part, reverse in part and remand to the Bankruptcy Court for further proceedings.
 

 I
 

 We turn first to trustee’s appeal from that portion of the Bankruptcy Court’s order which allows debtor to withhold production of any personal records, relating to property of the estate, if the contents of the records are incriminating or the production of the records would be incriminating.
 
 [1]
 
 Trustee asserts that the fifth amendment privilege is less protective in a bankruptcy proceeding than in other proceedings. He relies upon the bankruptcy code’s unequivocal requirement that debtor turn over the documents as part of the estate. This result, trustee argues, is supported by several Supreme Court decisions which, according to trustee, decline to erect a fifth amendment barrier to the production of a bankrupt debtor’s records.
 

 Trustee refers us to a recent amendment to section 521 of the Bankruptcy Code (11 U.S.C. § 521) which would require debtor to turn over the records, “whether or not immunity is granted under section 344 of this title.”
 
 [2]
 
 While trustee concedes that the amendment, which is not retroactive, became law too late for application to this ca.se, he urges us to heed the legislative history which characterizes it as a “clarifying amendment.” Trustee’s approach, however, would lead us to an untenable conclusion. Immunity is available under section 344 only where a fifth amendment privilege has been legitimately invoked. The constitutional privilege cannot be legislatively nullified, whether in bankruptcy or any other situation. We do not read the unamended section 521 as attempting any such nullification, despite the subsequent “clarifying amendment.”
 
 [3]
 

 
 *468
 
 Trustee asserts that his reading of section 521 is supported by four decisions of the Court:
 
 Dier v. Banton,
 
 262 U.S. 147, 43 S.Ct. 533, 67 L.Ed. 915 (1923);
 
 In Re Fuller,
 
 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923);
 
 Johnson v. United States,
 
 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913); and
 
 In Re Harris,
 
 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 73 (1911).
 

 All four cases involved bankrupts who sought to prevent the disclosure of certain incriminating documents.
 
 Dier, Johnson,
 
 and
 
 Fuller
 
 all differ from the instant case in an important respect: in each of these three cases, the bankrupt had already turned over the incriminating records to a trustee or a receiver, and sought to prevent the trustee or receiver from turning the records over to the government. In all three cases, the Court ruled that the debt- or’s fifth amendment privilege could not be interposed between the government and the third-party in possession of the records.
 

 Dier, Johnson,
 
 and
 
 Fuller
 
 each implicitly recognized the viability of the privilege in situations where the records are still in the possession of the bankrupt.
 
 See Fuller,
 
 262 U.S. at 93, 43 S.Ct. at 497 (fifth amendment privilege “is that of refusing himself to produce, as incriminating evidence against him, anything which he owns or has in his possession and control; but his privilege in respect to what was his and in his custody ceases on a transfer of the
 
 control and possession
 
 which takes place by legal proceedings and in pursuance of the rights of others, even though such transfer may bring the property into the ownership or control of one properly subject to subpoena duces tecum”) (emphasis added);
 
 Dier,
 
 262 U.S. at 149-50, 43 U.S. at 533-34 (“the right of the alleged bankrupt to protest against the use of his books and papers relating to his business as evidence against him ceases as soon as his
 
 possession and control
 
 over them pass from him”) (emphasis added);
 
 Johnson,
 
 228 U.S. at 458-59, 33 S.Ct. at 572 (“a party is privileged from producing the evidence, but not from its production.... [he may not] keep the protection from the introduction of documentary evidence
 
 that he would have had while he retained it,
 
 after the title and
 
 possession
 
 have gone to someone else”) (emphasis added).
 

 Only
 
 Harris,
 
 the oldest of the cases, approved of an order to the bankrupt to turn over his records. At the time
 
 Harris
 
 was decided, however, the Court had not yet come around to the view that the act of production itself could be testimonial. That view, implicit in the later cases of
 
 Dier, Johnson,
 
 and
 
 Fuller,
 
 has more recently been expressly recognized.
 
 See, e.g., United States v. Doe,
 
 — U.S. -, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984);
 
 Fisher v. United States,
 
 425 U.S. 391, 410-11, 96 S.Ct. 1569, 1580-81, 48 L.Ed.2d 39 (1976). Because
 
 Harris
 
 is inconsistent with this subsequent development, we believe that it is no longer controlling.
 

 We therefore conclude that nothing in the bankruptcy code or prior case law requires that a bankrupt debtor turn over personal records to the trustee regardless of a valid claim of fifth amendment privilege. We now turn to whether the Bankruptcy Court’s order was limited to protecting a valid fifth amendment privilege.
 

 The Bankruptcy Court ruled that the fifth amendment privilege would apply to any records the contents of which might be incriminating or the production of which might be incriminating. Contents and production require separate analysis.
 

 The view that the fifth amendment privilege extends to the contents of documents originated in
 
 Boyd v. United States,
 
 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Since
 
 Boyd,
 
 the protection afforded contents has been largely eroded. Most
 
 *469
 
 recently, the Court has refused to extend the privilege to the contents of accountant’s workpapers,
 
 see Fisher, supra,
 
 or the contents of the business records of a sole proprietor,
 
 see Doe, supra.
 
 Although we do not read either of these cases as holding that the contents of private papers are
 
 never
 
 privileged, it is evident from the dialogue between Justice Marshall and Justice O’Connor, in their concurring opinions in
 
 Doe,
 
 104 S.Ct. at 1245-46, that if contents are protected at all, it is only in rare situations, where compelled disclosure would break “the heart of our sense of privacy.”
 
 Doe,
 
 104 S.Ct. at 1246 n. 2 (Marshall, J., concurring in part) (quoting
 
 Couch v. United States,
 
 409 U.S. 322, 350, 93 S.Ct. 611, 626, 34 L.Ed.2d 548 (1972) (Marshall, J., dissenting)).
 

 The records at issue in the instant case are personal records, but only those personal records which relate to property of the bankrupt’s estate. Information relating to property of the estate is not so intimately personal as to evoke serious concern over privacy interests, particularly in bankruptcy where the trustee has a strong interest in knowing the nature and scope of the estate’s holdings. We reverse that portion of the Bankruptcy Court’s order which allows debtor to withhold records the contents of which might tend to incriminate him.
 

 Aside from the contents of the records, the act of producing them — if it is compelled, testimonial and incriminating — may, in itself be privileged.
 
 See Doe,
 
 104 S.Ct. at 1242. In the instant case, compulsion is obviously present. We must look closer, however, to determine whether production would be testimonial and incriminating.
 

 Production of documents may be testimonial in any of three ways: by acknowledging that the documents exist; by acknowledging that they are in the control of the person producing them; or by acknowledging that the person producing them believes they are the documents requested and thereby authenticating them for purposes of Fed.R.Evid. 901.
 
 See Doe,
 
 104 S.Ct. at 1243 & n. 11. Production of documents is not considered testimonial if each of these considerations is a “foregone conclusion.”
 
 Id.
 
 n. 13 (quoting
 
 Fisher,
 
 391 U.S. at 411, 96 S.Ct. at 1581). In
 
 Fisher,
 
 for example, a taxpayer was requested to turn over his accountant’s workpapers. The Court determined that such production was not testimonial because the existence and location of the documents were already known, 391 U.S. at 411, 96 S.Ct. at 1581, and the taxpayer’s production of his accountant’s papers would not be authentication sufficient to admit the documents as evidence,
 
 id.
 
 at 413, 96 S.Ct. at 1582.
 

 In
 
 Doe,
 
 on the other hand, a sole proprietor was asked to turn over his business records. He resisted, arguing that his production would admit the existence of the records and his possession of them, and would authenticate them for use at trial. Under those circumstances, the Court deferred to the district court’s finding that production would indeed be testimonial.
 
 See Doe,
 
 104 S.Ct. at 1243 & n. 13.
 

 The instant case is a hybrid of the situations in
 
 Fisher
 
 and
 
 Doe.
 
 As in
 
 Fisher,
 
 there is no serious doubt that personal records of debtor exist. Further, it is a foregone conclusion, bordering on a tautology, that debtor has control of his personal records. As in
 
 Doe,
 
 however, and unlike
 
 Fisher,
 
 debtor’s production of these records would be sufficient to authenticate them as his personal records.
 
 See
 
 Fed.R.Evid. 901(b)(1). In any future criminal prosecution, therefore, the government would be relieved of the need to authenticate these records. We conclude that debt- or’s production of his personal records would be testimonial.
 
 [4]
 

 
 *470
 
 We now address the question of incrimination. It is here that the distinction between the production of documents and the contents of documents becomes murky. There can be nothing incriminating about authenticating an innocuous document. Authentication cannot be incriminating unless the contents of the document tend to incriminate. Yet, we are constrained to apply the standards set out in
 
 Hoffman v. United States,
 
 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), and ask whether production itself might constitute “a link in the chain of evidence needed to prosecute” debtor.
 
 Id.
 
 at 486, 71 S.Ct. at 818.
 
 [5]
 

 This question cannot be answered with the record before us. Determining incriminating potential requires a factual inquiry which the lower court in this case did not conduct. The Bankruptcy Court ruled, as a matter of law, that debtor need not produce personal records if that production would be incriminating. We have indicated our agreement with that legal conclusion. On remand, the Bankruptcy Court must go further and determine, as a matter of fact, whether the production of specific records would be incriminating.
 

 We do not impose upon the Bankruptcy Court the onerous burden of necessarily assessing the incriminating potential of the production of each individual document. The record indicates nothing about the kinds of personal records being sought. If the documents fall into categories, the court may make a determination with respect to different types of documents. It is reasonable to allocate to debtor the burden of classifying them. Debtor, after all, bears the “burden of establishing a reasonable cause to fear prosecution” by “identi-fyihg the nature of the criminal charge or supplying sufficient facts so that a particular criminal charge can reasonably be identified by the court.”
 
 In re Morganroth,
 
 718 F.2d 161, 167 (6th Cir.1983).
 

 In the instant case, debtor must, at least, classify documents and indicate something about why the act of production of each class of documents might be incriminating. His showing will be sufficient if the court can, “by the use of reasonable inference or judicial imagination, conveive a sound basis for a reasonable fear of prosecution.”
 
 Id.
 
 at 169.
 
 [6]
 

 We reiterate, however, that it is the act of authentication, rather than the contents or nature of the documents, which must be incriminating. If the Bankruptcy Court determines that the authentication of any of the documents is a foregone conclusion, then it may order production of those documents regardless of their incriminating nature. On the other hand, if authentication is not a foregone conclusion, debtor’s act of authentication would be incriminating — as a link in the chain of evidence — only if the nature of the documents indicated that their contents might be incriminating.
 
 [7]
 

 We remand to the Bankruptcy Court with instructions to determine, consistent with this opinion, which, if any, types of personal records debtor is privileged not to produce.
 
 [8]
 

 
 *471
 
 II
 

 Debtor’s cross-appeal requests relief from the Bankruptcy Court’s order to produce certain records which debtor has, in fact, already produced. We dismiss debtor’s appeal for lack of jurisdiction. An order compelling the production of documents is not final and therefore is not appealable.
 
 See Matter of International Horizons,
 
 689 F.2d 996, 1001 n. 9 (11th Cir.1982); 9
 
 Moore’s Federal Practice
 
 ¶ 110.13[2] (2d ed. 1982). The only remedy for one who wishes to challenge a production order is to fail to comply and then appeal from a sentence for contempt.
 
 See National Super Spuds, Inc. v. New York Mercantile Exchange,
 
 591 F.2d 174 (2d Cir.1979);
 
 David v. Hooker, Ltd.,
 
 560 F.2d 412 (9th Cir.1977). Debtor did not choose this route. Instead, debtor chose to comply with the order.
 

 Compliance with the order does, in a sense, finalize the matter. However, even were we to agree that debtor’s compliance rendered the order final, we would also hold that such compliance mooted any possible appeal. Debtor argues that the appeal would not be moot since we could fashion an order requiring trustee to return the documents to debtor and prohibiting trustee from releasing the documents to the government. It is true that similar relief was granted over mootness objections in
 
 In re Grand Jury Investigation,
 
 642 F.2d 1184 (9th Cir.1981). However, we simply disagree with the result reached there. Any possible privilege debtor may have had would extend only to production of the records,
 
 [9]
 
 and we could fashion no order which would undo that act of production. The only damage we could contain at this point would be damage flowing from the contents, and debtor has no fifth amendment privilege with regard to the contents of the records involved here.
 

 Debtor’s appeal is dismissed for lack of jurisdiction. With regard to trustee’s appeal, we affirm in part, reverse in part and remand for further proceedings.
 

 [1]
 

 . Although the parties agree with each other that our jurisdiction over trustee’s appeal is authorized by 28 U.S.C. § 1293(b), we note that this is technically incorrect since § 1293 became effective April 1, 1984, after these appeals had been filed. Rather, our jurisdiction is based on the interim provisions of Pub.L. 95-598, Title IV, § 405(c)(1)(B), Nov. 6, 1978, 92 Stat. 2686. Trustee appeals only that part of the order which declines to compel production of particular documents. That portion of the order is final, and therefore appealable.
 

 [2]
 

 . 11 U.S.C. § 344 authorizes the granting of immunity pursuant to 18 U.S.C. §§ 6001-6005 in bankruptcy proceedings where information is sought from one who claims a fifth amendment privilege. A peripheral point of disagreement between trustee and debtor is whether § 344 authorizes a grant of immunity for all testimonial acts, including production of documents, or only for verbal testimony. This is a dispute we need not settle. Debtor has not been offered immunity with respect to production of the documents in question, thus we are not presented with a question about the scope of statutory immunity. The issue, rather, is the scope of the fifth amendment privilege.
 

 [3]
 

 .We emphasize that we are not passing on the validity of the amended section 521. It may have applications which do not threaten the fifth amendment privilege. For example, a bankruptcy court may deny discharge if a debt- or refuses to surrender the records pursuant to section 521. Also, voluntary bankruptcy proceedings could simply be dismissed if debtor refuses to surrender such records. This would not violate any asserted privilege.
 
 Cf. United States v. Rylander,
 
 460 U.S. 752, 103 S.Ct. 1548,
 
 *468
 
 75 L.Ed.2d 521 (1983) (party cannot substitute claim of privilege for burden of production but, rather, must choose between them). Thus, our holding will have only a minimal effect on cases involving voluntary proceedings. With regard to the unamended section 521, we simply de-dine to read into it unnecessarily a provision which, in our view, would render it unconstitutional; i.e., a requirement of testimonial production of documents in disregard of any fifth amendment privilege.
 

 [4]
 

 . Although we suspect that authentication is the aspect of production most likely to be testimonial in this case, we do not completely rule out the possibility that admitting the existence of some of the documents would be testimonial. While it is a foregone conclusion that some personal records, such as check stubs, exist, it may be that the existence of particular records is unknown. If that factual determination is made with respect to certain records, then production of those records would be testimonial for that reason as well.
 

 [5]
 

 . That this standard is as generous as anyone claiming the privilege could hope for is reflected in one commentator’s remark that *‘[f]inding any responses to be wholly free of an incriminating potential under this standard is difficult.” Heidt,
 
 The Conjurer's Circle: The Fifth Amendment Privilege in Civil Cases,
 
 91
 
 Yale L.J.
 
 1062, 1072 (1982).
 

 [6]
 

 . We are mindful that
 
 post-Doe
 
 production problems about which we are not presently aware may come before the bankruptcy court for resolution.
 
 See Manges v. United States,
 
 745 F.2d 1250 (9th Cir.1984);
 
 United States v. Ghidoni,
 
 732 F.2d 814 (11th Cir.1984).
 

 [7]
 

 . This troublesome quagmire could be avoided if the government were to grant immunity to debtor pursuant to 11 U.S.C. § 344. If debtor received immunity, he could not refuse to produce the documents based on the fifth amendment privilege.
 
 See Kastigar v. United States,
 
 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Since the immunity would only run to that which is privileged, i.e., the act of production, the government would still be free to use the contents of the documents in any future criminal proceeding, providing that the documents could be independently authenticated.
 

 [8]
 

 .In reaching our decision, we have not addressed alternative means by which the trustee might secure the documents. Because the trustee has a property right in all of the estate’s property, it may be that he can acquire the
 
 *471
 
 documents through the use of a remedy in the nature of replevin.
 
 See, e.g.,
 
 Tenn.Code Ann. §§ 29-30-104 — 29-30-107 (1980) (Writ of Possession); Mich.Gen.Ct.R. 757 (Claim and Delivery). We hold only that, whichever remedy is pursued, debtor may not be compelled personally to turn the documents over.
 

 [9]
 

 . Because our ruling on the jurisdictional question disposes of debtor’s appeal, we need not decide whether debtor had a fifth amendment privilege with regard to production of the corporate and partnership records turned over. We note, however, that the Supreme Court has quite plainly declined to recognize any privilege with regard to production of such records.
 
 See, e.g., Bellis
 
 v.
 
 United States,
 
 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).
 
 Doe, supra,
 
 is not to the contrary, as it involved the records of a sole proprietorship.