### In re TOYOTA OF MORRISTOWN, INC., Debtor.

### In re TOYOTA OF MORRISTOWN LEASING, INC., Debtor.

**Steven T. DORROUGH; Larry J. Parks; Paul Herman; Toyota of Morristown, Inc.; and Toyota of Morristown Leasing, Inc., Plaintiffs,**

v.

### THIRD NATIONAL BANK IN KNOXVILLE, Defendant.

**Bankruptcy Nos. 3–89–03352, 3–89–03351.**

**Adv. No. 3–89–0221.**

United States Bankruptcy Court, E.D. Tennessee.

Aug. 20, 1990.

G. Kevin Hardin, Knoxville, Tenn., for Toyota of Morristown, Inc. and Toyota of Morristown Leasing, Inc.

Michael L. Dagley, Nashville, Tenn., for Third Nat. Bank.

Ralph E. Harwell, Knoxville, Tenn., for Terry Coleman.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This case is presently before the court upon the motion of Terry Coleman, former general manager of the debtors in these consolidated bankruptcy cases, to quash a subpoena duces tecum issued at the request of Third National Bank (Third National). Coleman seeks to quash the subpoena by invoking his fifth amendment privilege against self-incrimination. Having considered the arguments of counsel, and having reviewed the sealed affidavits submitted in connection with the motion, the court concludes that Coleman's fifth amendment privilege has been validly asserted and that the motion to quash should be sustained.

### I.

On November 10, 1989, Toyota of Morristown, Inc. and Toyota of Morristown Leasing, Inc. (debtors) filed petitions for bankruptcy under chapter 11 of the Bankruptcy Code. On December 27, 1989, the instant adversary proceeding was commenced by debtors and individual plaintiffs associated with the debtors against Third National. Generally, the complaint alleges Third National solicited the debtor's financial business and then negligently conducted such business resulting in losses to the debtors and individual plaintiffs. Terry Coleman is not a party to this adversary proceeding.

From 1984 through October 1989, Terry Coleman was a stockholder and employee of Toyota of Morristown, Inc. During most of the time relevant to this adversary proceeding, Coleman was the general manager of the automobile retail establishment responsible for the oversight of the day-to-day operations.

At some point, presumably around October 1989, Coleman left the employ of Toyota of Morristown, Inc. Thereafter, he became aware of several criminal investigations involving himself and others concerning their financial dealings with regard to the lending institutions with which Toyota of Morristown, Inc. dealt. On July 2, 1990, Coleman was indicted by the Grand Jury

for Hamblen County, Tennessee, in an eleven-count indictment charging fraudulent breach of trust and/or sale of mortgaged property stemming from his prior employment with Toyota of Morristown, Inc. At the present time, Coleman is awaiting trial on the state charges. Coleman has also been advised that he is under federal investigation concerning false statements allegedly made by him and others to financial institutions arising out of his previous association with Toyota of Morristown, Inc.

In the course of its defense in this adversary proceeding, Third National caused a subpoena duces tecum to be served on Coleman requesting him to appear for a deposition and to produce the following documents which Third National contends are highly relevant to its defense in this case.

> Any and all documents in the possession of Terry Coleman relating in any way to Toyota of Morristown, Inc. and/or Toyota of Morristown Leasing, Inc. and/or Third National Bank, including but not limited to a box of telecopies that Mr. Coleman took with him when he left the employ of Toyota of Morristown, Inc. and/or Toyota of Morristown Leasing, Inc.

Although a copy of the subpoena was not provided as an exhibit to the motion to quash, the arguments of counsel suggest the subpoena was served upon Coleman in his individual capacity rather than as a custodian of records of the debtors.

On June 18, 1990, one day before Coleman was to be deposed, Coleman's counsel filed the instant motion to quash the subpoena duces tecum. The following day, Coleman appeared for a deposition but declined to answer on fifth amendment grounds any questions concerning the documents requested in the subpoena. A hearing on Coleman's motion to quash was held July 6, 1990. At the hearing, the court instructed Coleman and his counsel to file affidavits under seal classifying the documents at issue in categories and setting forth the basis for the fifth amendment claim. A protective order was entered limiting dissemination of the sealed

affidavits only to the bank's counsel and the court. Those affidavits have now been filed and the court has also received responses to the affidavits from counsel for the bank.

## II.

It is well settled that corporations and various other collective entities are not entitled to assert any fifth amendment privilege since such a privilege is available only to natural individuals. *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). It is also settled that when the business records of a corporation are subpoenaed from the corporation or from the custodian of records of the corporation, the officers or the custodian of records of the corporation, in their representative capacity, cannot withhold production on fifth amendment grounds. *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *In re Grand Jury Proceedings (Morganstern)*, 771 F.2d 143 (6th Cir.1985). This is so even if the production of the records would personally incriminate the officer or custodian. *Braswell*, 108 S.Ct. at 2295; *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *In re Grand Jury Proceedings*, 771 F.2d at 148. As the *Braswell* Court stated:

> From *Wilson* forward, the Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, *Bellis, supra*, 417 U.S., at 90, 94 S.Ct., at 2184, and a custodian's assumption of his representa-

tive capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government. Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege.

108 S.Ct. at 2291.

Third National asserts Coleman is in possession of certain of debtors' business records and Coleman cannot assert the fifth amendment to prevent production of such records. Coleman maintains any documents he may have, if any at all, are copies of papers prepared by others within the debtor's organization. Coleman contends these copies, if any, are not the official records of the debtors, are not held in any representative capacity for the debtors, and have become his personal papers. As such, Coleman argues production of private papers or those held in a purely personal capacity may not be compelled if the act of production would incriminate the person in possession of the papers.

The issue raised by Coleman's motion to quash was similar to the issue considered by the Second Circuit Court of Appeals in *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981 (2d Cir.1983). In that case, a former officer of a corporation allegedly had in his possession copies of records from his former corporate employer and some original corporate records that he apparently misappropriated when he left the company. The former officer was the target of a grand jury investigation into alleged fraud in connection with corporate financial statements. The grand jury issued a subpoena duces tecum to the former officer demanding that he produce the corporate records in his custody. He refused claiming the fifth amendment privilege against self-incrimination. The government then filed a motion in the district court to enforce the subpoena. The district court granted the motion, holding that even though production of the documents would tacitly admit their existence and possession

by the former officer, the possessor could not assert his act of producing corporate documents as a basis for his fifth amendment claim since the records were corporate records and not individual or sole proprietor records. The court of appeals reversed.

Acknowledging the rule that a custodian of corporate records cannot withhold corporate records on the basis of a fifth amendment claim, the court distinguished the situation in which an individual possesses corporate records in an individual capacity. The court stated:

Once the officer leaves the company's employ, however, he no longer acts as a corporate representative but functions in an individual capacity in his possession of corporate records. Although his possession of them as a private citizen may have been derived from his wrongful misappropriation of them from the corporation, we do not view such conduct as depriving him, once the documents are in his possession (rather than as a corporate representative), of his right under the Fifth Amendment to invoke the act of production doctrine outlined in *Fisher*. It is elementary that a person need not be guiltless to qualify for invocation of the Fifth Amendment. For the purpose of determining the extent to which a natural person may invoke his Fifth Amendment privilege under *Fisher*, the fact that the subpoenaed documents in his possession were prepared by a corporation is not directly relevant. The *Fisher* doctrine simply does not turn on either content or authorship of the documents; it is the fact, and the circumstances, of *possession* that are controlling. *Couch v. United States*, [409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973)] *supra*. If, as the Supreme Court indicated in *Fisher*, the act of production doctrine applies to one type of otherwise unprivileged document (accountant's work papers) it can apply as well to corporate records in an individual's possession.

722 F.2d at 986–87.

The distinction between compelled production of corporate records held in a rep-

resentative capacity and compelled production of corporate records held in a personal capacity was implicitly recognized by the Supreme Court in *Braswell.* The Court noted:

> Although a corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating, we do think certain consequences flow from the fact that the custodian's act of production is one in his representative rather than personal capacity. Because the custodian acts as a representative, the act is deemed one of the corporation and not the individual. Therefore, the Government concedes, as it must, that it may make no evidentiary use of the "individual act" against the individual.

108 S.Ct. at 2295.

█ In the instant case, Coleman is neither an officer, agent, nor custodian of records of Toyota of Morristown, Inc. Any act of producing corporate records, whether the records are extra copies of records furnished to Coleman or original records illicitly obtained by Coleman upon his departure from the company, would be an act by Coleman, not in a representative capacity, but in his personal capacity. Such an act, if incriminating, could be used by the government as evidence of a personal act or admission by Coleman.

The fact that Coleman is acting in a personal capacity with respect to the subpoenaed documents does not automatically permit him to assert his fifth amendment privilege and withhold production of the documents. The court must next determine whether the content of the documents or the act of producing the documents is privileged.

Recent Supreme Court and Sixth Circuit Court of Appeals' opinions all but eliminate any privilege based on the contents of incriminating documents. In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court stated, "[T]he Fifth Amendment protects against 'compelled self-incrimination, not [the disclosure of] private information.'" *Id.* at 401, 96 S.Ct. at 1576 (citing *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). In *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Supreme Court determined the contents of business records, even if held in a personal capacity, were not privileged. The rationale given by the Supreme Court is that if documents are prepared voluntarily, no compulsion is present, and the fifth amendment is not violated. *See id.* at 610–12, 104 S.Ct. at 1241–42 (discussing *Fisher v. United States*) and at 618, 104 S.Ct. at 1245 (O'Conner, J., concurring). This rationale, which steers away from a privacy analysis, also easily extends to private and personal papers. In *Butcher v. Bailey*, 753 F.2d 465 (6th Cir.1985), the Sixth Circuit Court of Appeals stated:

> Although we do not read either of these cases [*Fisher* and *Doe*] as holding that the contents of private papers are *never* privileged, it is evident from the dialogue between Justice Marshall and Justice O'Conner, in their concurring opinions in *Doe*, 104 S.Ct. at 1245–46, that if contents are protected at all, it is only in rare situations, where compelled disclosure would break "the heart of our sense of privacy."

*Id.* at 469 (citations omitted). Because the documents subpoenaed by Third National would relate to the debtors and the debtors' business transactions, the contents of such documents would not be privileged. *See Butcher*, 753 F.2d at 468–69.

█ The act of producing the documents, however, may be privileged if such production is compelled, testimonial, and incriminating. *See Doe*, 104 S.Ct. at 1242–43; *Fisher*, 96 S.Ct. at 1581; *Butcher*, 753 F.2d at 469. Production of documents may be testimonial: (1) by acknowledging the documents' existence; (2) by acknowledging the documents are in the control of the person producing them; or (3) by acknowledging the documents are the ones being requested and thereby authenticating them under the Federal Rules of Evidence. *Butcher*, 753 F.2d at 469 (citing *Doe*, 465 U.S. at 613 & n. 11, 104 S.Ct. at 1242 & n. 11). Whether the production of documents

is incriminating does not lend itself to a categorical answer, but must "depend on the facts and circumstances of particular cases or classes thereof." *Fisher*, 96 S.Ct. at 1581.

The burden is upon the movant to demonstrate to the court that production of specific documents will be incriminating. In *Butcher*, the Sixth Circuit Court of Appeals required the movant to, at least, classify documents into categories and indicate something about why the movants' production of each class of documents might be incriminating. *Butcher*, 753 F.2d at 470. The court stated the movant will have made a sufficient showing if "the court can, 'by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution.'" *Id.* (quoting *In re Morganroth*, 718 F.2d 161, 169 (6th Cir.1983)).

In this proceeding, Coleman and his attorney have attempted to comply with the procedure outlined in *Butcher*. Through sealed affidavits, the documents in question, if any exist, have been grouped by category and generally characterized. These characterizations, while admittedly vague, appear to be sufficient for the court to examine them under the Sixth Circuit Court of Appeals' "reasonable inference or judicial imagination" standard.

One aspect of the federal investigation of Coleman focuses upon alleged false statements made by him to federally-insured banks relating to the dealings between Toyota of Morristown, Inc. and the banks. Coleman's production of documents would acknowledge minimally his possession of them and could be used as circumstantial evidence of his knowledge of their contents. Knowledge by Coleman of the true state of affairs of the corporation as reflected in corporate records of the kind subpoenaed here, and the dates he possessed such knowledge, may provide prosecutors with a "link in the chain of evidence needed to prosecute" Coleman on a false statement charge. *See Butcher*, 753 F.2d at 470.

Accordingly, an order will enter granting Coleman's motion to quash the subpoena duces tecum issued by Third National.