**In re David William ROSS and Darlene Vicky Ross, Debtors.**

**Bankruptcy No. 93–00878–7.**

United States Bankruptcy Court, D. Idaho.

June 17, 1993.

Randal J. French, Bauer & French, Boise, ID, for debtors.

Terry L. Myers, Givens, Pursley & Huntley, Boise, ID, for trustee.

Gary L. McClendon, Staff Atty., Office of U.S. Trustee, Boise, ID.

Michael L. Schindele, Boise, ID, for Chrysler Credit Corp.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

Debtors filed their voluntary joint chapter 7 petition in this Court on March 29, 1993. On April 29, 1993, the debtors filed their statement of financial affairs and chapter 7 schedules. These documents, however, contained no information except the name and compensation details of the debtors' attorney. Instead of providing the information required by the statement of affairs and schedules, the debtors inserted at the bottom of each page the following statement: "Each Debtor refuses to answer this question or each of these questions on the grounds that it may tend to incriminate them. Each debtor invokes his or her Fifth Amendment Privilege against self-incrimination."

While the debtors have thus asserted a blanket Fifth Amendment privilege in their schedules, the trustee has not moved to require the filing of complete schedules. The trustee instead has moved for an order:

1. Requiring the Debtors, immediately and without exception, to turn over to Trustee all property of the estate within their control, custody or possession, whether actual or constructive, and requiring that the Debtors thereafter certify, unequivocally and without qualification, under penalty of perjury, that they have done so.

2. Requiring the Debtors, immediately and without exception, to turn over to Trustee all books, documents, records and papers relating to property of the estate within their control, custody or possession, whether actual or constructive, and requiring that the Debtors thereafter certify, unequivocally and without qualification, under penalty of perjury, that they have done so.

3. Requiring the Debtors to identify any and all other persons in possession or control of recorded information concerning the bankruptcy estate, including

books, documents, records and papers relating to the Debtors' property or financial affairs, in order that the Trustee can determine propriety of turnover under § 542(e) of the Code, and requiring that the Debtors thereafter certify, unequivocally and without qualification, under penalty of perjury, that they have done so.

4. Requiring the Debtors, in complying with the foregoing, to turn over and surrender all stock certificates, or other indicia of ownership in corporations, to identify whether or not any such corporation is solely owned or controlled by Debtors, to identify the custodian of all corporate books and records, and requiring that the Debtors thereafter certify, unequivocally and without qualification, under penalty of perjury, that they have done so.

5. Requiring that the Debtors identify each and every transfer of property of the estate, or of any interest therein, which may have occurred subsequent to the filing of the petition for relief, and requiring that the Debtors thereafter certify, unequivocally and without qualification, under penalty of perjury, that they have done so.

Motion to Compel Surrender of Property, Books and Records, at 3–4.

### 1. *Surrender of Property of Estate and Documents Relating Thereto*

The basis of the trustee's motion is found in the Bankruptcy Code. The commencement of a case, *i.e.*, the filing of a petition, creates an estate. 11 U.S.C. § 541(a).[1]

This estate is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). A trustee in a chapter 7 case is given the duty to administer the property of the estate. 11 U.S.C. § 704.[2] The statutory basis of the turnover order is found in section 521 of the Bankruptcy Code, which provides:

The debtor shall—

\* \* \* \* \* \*

(4) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title;....

11 U.S.C. § 521(4). Section 344, referenced in this statute, provides that immunity may be granted in bankruptcy matters with regard to testimony and other compelled forms of production.[3]

 This does not end the analysis, because these statutes must give way before constitutional rights if those rights are infringed. The Fifth Amendment provides, in its relevant part: "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege against self-incrimination applies to bankruptcy proceedings. *McCarthy v. Arndstein*, 266 U.S. 34, 41, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). In order to assert the privilege, "the claimant

---

**1.** Section 541 provides in its relevant part:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. 11 U.S.C. § 541(a).

**2.** Section 704 provides in part:

The trustee shall—
(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;
\* \* \* \* \* \*
(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee. 11 U.S.C. § 704(1), (2), (9).

**3.** Section 344 provides:

Immunity for persons required to submit to examination, to testify, or to provide information in a case under this title may be granted under part V of title 18. 11 U.S.C. § 344.

must be 'confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination.'" *United States v. Paris*, 827 F.2d 395, 398 (9th Cir.1987) (quoting *United States v. Apfelbaum*, 445 U.S. 115, 128, 100 S.Ct. 948, 956, 63 L.Ed.2d 250 (1980)). Information is protected by the privilege not only if it would support a criminal conviction, but even if "the responses would merely 'provide a lead or clue' to evidence having a tendency to incriminate." *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). A debtor cannot be denied a discharge for asserting his Fifth Amendment privilege as to material questions propounded to the debtor, unless the debtor has been granted immunity and still refuses to testify. 11 U.S.C. § 727(a)(6).[4]

■ Debtors cannot base their claim of privilege upon the allegation that the contents of their business records might be incriminating. In *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Supreme Court held the contents of business records of a sole proprietorship were not privileged, because they had not been prepared under compulsion. 465 U.S. at 610–12, 104 S.Ct. at 1240–42. In her concurring opinion, Justice O'Connor states she has written "to make explicit what is implicit in the analysis of that opinion: that the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind." 465 U.S. at 618, 104 S.Ct. at 1245. The Supreme Court has adopted this interpretation of *Doe*. *Baltimore City Dept. of Social Serv. v. Bouknight*, 493 U.S. 549, 555, 110 S.Ct. 900, 905, 107 L.Ed.2d 992 (1990) (mother could not resist production of a child on the grounds that examination of the child might reveal incriminating evidence). Therefore, the debtors cannot resist the production of documents on the grounds that the documents contain incriminating information.

There is an extensive line of prior Supreme Court decisions that have held the records of a debtor in bankruptcy are not privileged under the Fifth Amendment. In *In re Harris*, 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 732 (1911), an interim receiver in bankruptcy sought to require the debtor in bankruptcy to produce his books and records. The Supreme Court held the debtor could not claim the privilege against self-incrimination with regard to these papers. Justice Holmes, in authoring the decision of the Court, stated:

> [N]o constitutional rights are touched. The question is not of testimony but of surrender—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he is no longer entitled to keep. If a trustee had been appointed, the title to the books would have vested in him by the express terms of § 70 [of the Bankruptcy Act of 1898], and the bankrupt could not have withheld possession of what he no longer owned, on the ground that otherwise he might be punished. That is one of the misfortunes of bankruptcy if it follows crime. The right not to be compelled to be a witness against oneself is not a right to appropriate property that may tell one's story.

221 U.S. at 279–80, 31 S.Ct. at 558.

Two years later, the Supreme Court again dealt with this issue in *Johnson v. United States*, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913). A debtor in bankruptcy was indicted and the conviction was based, in part, on the evidence of his own books and records, that had been surren-

---

**4.** Section 727 provides, in its relevant part, as follows:

 (a) The court shall grant the debtor a discharge, unless—

 \* \* \* \* \* \*

 (6) the debtor has refused, in the case—

 \* \* \* \* \* \*

 (B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; ....

11 U.S.C. § 727(a)(6)(B).

dered to the trustee. Justice Holmes again announced the decision of the Court. "A party is privileged from producing the evidence but not from its production. The transfer by bankruptcy is no different from a transfer by execution of a volume with a confession written on the flyleaf." 228 U.S. at 458, 33 S.Ct. at 572. The Supreme Court then went on to say:

It is true that the transfer of the books may have been against the defendant's will, but it is compelled by the law as a necessary incident to the distribution of his property, not in order to obtain criminal evidence against him. Of course a man cannot protect his property from being used to pay his debts by attaching to it a disclosure of crime. If the documentary confession comes to a third hand *alio intuitu,* as this did, the use of it in court does not compel the defendant to be a witness against himself.

228 U.S. at 458–59, 33 S.Ct. at 572.

In *Ex Parte Fuller,* 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881 (1923), the debtors in an involuntary bankruptcy surrendered their books to the receiver after obtaining a stipulation that the books would only be used in connection with the bankruptcy, and would not be turned over to any district attorney, or used before any grand jury or petit jury. A trustee in bankruptcy was appointed, and the referee was directed to turn over the books and records to the trustee without any conditions. A district attorney subpoenaed these records from the trustee, and the debtors appealed. The Court held:

A man who becomes a bankrupt or who is brought into a bankruptcy court has no right to delay the legal transfer of the possession and title of any of his property to the officers appointed by law for its custody or for its disposition, on the ground that the transfer of such property will carry with it incriminating evidence against him. His property and its possession pass from him by operation and due proceedings of law, and when control and possession have passed from him, he has no constitutional right to prevent its use for any legitimate purpose. His privilege secured to him by the Fourth and Fifth Amendments to the Constitution is that of refusing himself to produce, as incriminating evidence against him, anything which he owns or has in his possession and control, but his privilege in respect to what was his and in his custody ceases on a transfer of the control and possession which takes place by legal proceedings and in pursuance of the rights of others, even though such transfer may bring the property into the ownership or control of one properly subject to subpoena *duces tecum.*

262 U.S. at 93–94, 43 S.Ct. at 497.

An involuntary bankruptcy petition was filed against the debtors in the case of *Dier v. Banton,* 262 U.S. 147, 43 S.Ct. 533, 67 L.Ed. 915 (1923). Two days later, the court issued an order directing the debtors to turn over all of their property and records to the receiver in bankruptcy, and the debtors complied. A district attorney sought to obtain the records, and the debtors sought an injunction against their use as violative of their Fifth Amendment rights. The Supreme Court held:

[T]he right of the alleged bankrupt to protest against the use of his books and papers relating to his business as evidence against him ceases as soon as his possession and control over them pass from him by the order directing their delivery into the hands of the Receiver and into the custody of the court. This change of possession and control is for the purpose of properly carrying on the investigation into the affairs of the alleged bankrupt and the preservation of his assets pending such investigation, the adjudication of bankruptcy *vel non,* and if bankruptcy is adjudged, the proper distribution of the estate. It may be that the allegation of bankruptcy will not be sustained, and in that case, the alleged bankrupt will be entitled to a return of his property including his books and papers; and when they are returned, he may refuse to produce them and stand on his constitutional rights. But while they are, in the due course of the bankruptcy proceedings, taken out of his possession and control, his immunity from

producing them, secured him under the Fourth and Fifth Amendments, does not enure to his protection. He has lost any right to object to their use as evidence because, not for purpose of evidence, but in the due investigation of his alleged bankruptcy and the preservation of his estate pending such investigation, the control and possession of his books and papers relating to his business were lawfully taken from him.

262 U.S. at 149–50, 43 S.Ct. at 534.

In *McCarthy v. Arndstein, supra,* holding a debtor was entitled to assert his Fifth Amendment privilege against examination in a bankruptcy proceeding, the Supreme Court stated in dicta:

> The law requires a bankrupt to surrender his property. The books and papers of a business are part of the bankrupt estate.... To permit him to retain possession, because surrender might involve disclosure of a crime, would destroy a property right. The constitutional privilege relates to the adjective law. It does not relieve one from compliance with the substantive obligation to surrender property.

266 U.S. at 41, 45 S.Ct. at 17 (citation omitted).

■ The debtors rest their claim of privilege upon the "act of production" doctrine. Debtors argue the act of producing their books and records would tend to incriminate them in violation of the Fifth Amendment. As the Supreme Court has stated:

> Although the contents of a document may not be privileged, the act of producing the document may be. [*Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976).] A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect. As we noted in *Fisher:*
>
> > "Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It would also indicate the taxpayer's belief that the papers are those described in the sub-

poena." ... *Id.,* at 410 [96 S.Ct. at 1581].

*United States v. Doe,* 465 U.S. 605, 612–13, 104 S.Ct. 1237, 1242–43, 79 L.Ed.2d 552 (1984). The Court additionally noted that compelled production might require the party to tacitly concede that the documents were authentic. 465 U.S. at 613 n. 11, 104 S.Ct. at 1242 n. 11.

. . . . .

In the instant case the requested order would not be violative of the debtors' Fifth Amendment privilege. In *Fisher,* the Internal Revenue Service subpoenaed the documents of two taxpayers; in each case, the documents had been created by a taxpayer's accountant and were held by the taxpayer's attorney. Both the taxpayers and their attorney in one case, and just the taxpayer's attorney in the other, defended against enforcement of the subpoena on the grounds it violated the Fifth Amendment. After suggesting that the act of producing documents in compliance with the subpoena might fall within the purview of the Fifth Amendment, the Court continued:

> The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof. In light of the records now before us, we are confident that however incriminating the contents of the accountant's workpapers might be, the act of producing them—the only thing which the taxpayer is compelled to do—would not itself involve testimonial self-incrimination.

425 U.S. at 410–11, 96 S.Ct. at 1581.

The debtors' act of producing their records relating to property of the estate does not, on the facts of this case, infringe the debtors' Fifth Amendment rights. The request is not of such a nature that compliance automatically would implicate the

debtors in a crime because possession of the thing sought is criminal. The debtors did not prepare the documents under governmental compulsion, and possession of business records is not a crime. The request is for documents the debtors are not entitled to keep as a result of a procedure they voluntarily invoked (*i.e.*, bankruptcy). Hence, the debtors' implicit admission that the records exist, and that they possess or control the records, provides no real information of use to the government; these are the sort of records that virtually any debtor would possess, and it is not possession of the records but their contents alone that might prove incriminating.

*Fisher* suggests this conclusion, relying in part on the decision in *Harris.*

> This Court has also time and again allowed subpoenas against the custodian of corporate documents or those belonging to other collective entities such as unions and partnerships *and those of bankrupt businesses* over claims that the documents will incriminate the custodian despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor. *E.g., Wilson v. United States,* 221 U.S. 361 [31 S.Ct. 538, 55 L.Ed. 771] (1911); *Dreier v. United States,* 221 U.S. 394 [31 S.Ct. 550, 55 L.Ed. 784] (1911); *United States v. White,* 322 U.S. 694 [64 S.Ct. 1248, 88 L.Ed. 1542] (1944); *Bellis v. United States,* 417 U.S. 85 [94 S.Ct. 2179, 40 L.Ed.2d 678] (1974); *In re Harris, supra.* The existence and possession or control of the subpoenaed documents being no more in issue here than in the above cases, the summons is equally enforceable.

425 U.S. at 411–12, 96 S.Ct. at 1581 (emphasis added). In a case more directly on point, the Sixth Circuit noted with regard to production of the personal documents of a debtor: "[T]here is no serious doubt that personal records of debtor exist. Further, it is a foregone conclusion, bordering on a tautology, that debtor has control of his personal records." *Butcher v. Bailey,* 753 F.2d 465, 469 (6th Cir.), *cert. dismissed,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985) (holding that debtor's act of produc-

ing documents was not testimonial with regard to either existence or possession of documents).

■ Similarly, production of the documents would not be testimonial by authenticating the documents. In rejecting the argument that compliance with the subpoena would violate the Fifth Amendment by implicitly authenticating the documents, *Fisher* again relied in part on *Harris:*

> Moreover, in *Wilson v. United States, supra; Dreier v. United States, supra; United States v. White, supra; Bellis v. United States, supra;* and *In re Harris, supra,* the custodian of corporate, union, or partnership books or *those of a bankrupt business* was ordered to respond to a subpoena for the business' books even though doing so involved a "representation that the documents produced are those demanded by the subpoena."

425 U.S. at 413, 96 S.Ct. at 1582 (emphasis added) (quoting *Curcio v. United States,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957)). In a footnote to the section just quoted, the Court stated "[i]n these cases compliance with the subpoena is required even though the books have been kept by the person subpoenaed and his producing them would itself be sufficient authentication to permit their introduction against him." 425 U.S. at 413 n. 14, 96 S.Ct. at 1582 n. 14. Therefore, implicit authentication by production is not, on the facts of this case, within the protection of the Fifth Amendment.

The *Butcher* decision concluded that implicit authentication through the act of production might be sufficiently testimonial to be incriminating. 753 F.2d at 469. The Sixth Circuit remanded the case to the bankruptcy court, where the debtors were required to classify the documents and show how the implicit authentication by production of any class of documents would be incriminating. 753 F.2d at 470. If authentication of a class of documents was a foregone conclusion, then the documents would not be privileged. *Id.* "On the other hand, if authentication is not a foregone conclusion, debtor's act of authentication would be incriminating—as a link

in the chain of evidence—only if the nature of the documents indicated that their contents might be incriminating." *Id.* (footnote omitted). In the present case, debtors have made no attempt to classify their documents, or to show to the Court there are incriminating documents whose authentication is not a foregone conclusion. Thus, even if implicit authentication was protected by the Fifth Amendment in this case, debtors have not established an entitlement to the privilege. See the discussion of *Neff, infra* (where danger of incrimination is hidden, witness must make a positive disclosure in support of privilege).

As may be seen from the above-quoted portions of *Fisher,* the Supreme Court repeatedly relied on *Harris* in support of the *Fisher* decision. Such reliance suggests that situations such as *Harris* and the present case are not within the "act of production" doctrine. *Harris* and its progeny remain good law in the bankruptcy context.

The conclusion that *Harris* remains good law is buttressed by recent bankruptcy court decisions based on the Supreme Court's holding in *Baltimore City Dept. of Social Serv. v. Bouknight,* 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990). In *Bouknight,* a mother suspected of abusing her child was permitted to retain custody over the child pursuant to extensive conditions imposed by the juvenile court. Eight months later, the Department of Social Services sought an order removing the child from the mother's custody for placement in foster care. The Department also sought judicial relief because of the mother's failure to produce the child or to reveal where the child was located. The mother repeatedly failed to produce the child as ordered, or reveal the child's location, and the mother was held in contempt. The mother challenged the contempt order as requiring her to violate her Fifth Amendment rights.

The Supreme Court first noted there was no Fifth Amendment privilege with regard to the contents of the thing produced; thus, the mother could not refuse to produce the child because of anything that examination of the child might discover.

493 U.S. at 555, 110 S.Ct. at 905. Because the government could identify the child without testimony from the mother, there was no implicit incrimination in asserting that the child produced was in fact the child in issue. *Id.* Therefore, the basis of the mother's Fifth Amendment claim had to be grounded on the theory that production of the child constituted an implicit assertion that the mother had possession and control over the child at the time of production. *Id.*

The Supreme Court summarized its holding in the case as follows:

> The possibility that a production order will compel testimonial assertions that may prove incriminating does not, in all contexts, justify invoking the privilege to resist production.... Even assuming that this limited testimonial assertion is sufficiently incriminating and "sufficiently testimonial for purposes of the privilege," *Fisher, supra,* [425 U.S.] at 411 [96 S.Ct. at 1581], Bouknight [the mother] may not invoke the privilege to resist the production order because she has assumed custodial duties related to production and because production is required as part of a noncriminal regulatory regime.

493 U.S. at 555–56, 110 S.Ct. at 905 (internal citation omitted). This conclusion was based in substantial part on the fact the mother had accepted control of the child pursuant to court order, and therefore created a situation in which inspection of the child could be compelled.

> By accepting care of Maurice [the child] subject to the custodial order's conditions (including requirements that she cooperate with BCDSS [the Department of Social Services], follow a prescribed training regime, and be subject to further court orders), Bouknight [the mother] submitted to the routine operation of the regulatory system and agreed to hold Maurice in a manner consonant with the State's regulatory interests and subject to inspection by BCDSS.... In assuming the obligations attending custody, Bouknight "has accepted the incident obligation to permit inspection."

493 U.S. at 559, 110 S.Ct. at 907 (citation omitted) (quoting *Wilson v. United States*, 221 U.S. 361, 382, 31 S.Ct. 538, 545, 55 L.Ed. 771 (1911)). The Court relied in part on the *Harris* decision in reaching its conclusion. 493 U.S. at 556–57, 110 S.Ct. at 905–06.

In a lengthy discussion of this and other Fifth Amendment cases, the court in *In re Fairbanks*, 135 B.R. 717 (Bankr.D.N.H. 1991), held that documents in the possession of attorneys for a missing debtor were not privileged under the Fifth Amendment. The Court noted the problems involved in reconciling the possible self-incrimination risks involved in ordering production of a bankrupt's documents, and the trustee's need for those documents to carry out his statutory duties under the Bankruptcy Code. 135 B.R. at 730.

> The resolution of the conundrum mentioned above is to simply recognize that there are some regulatory disclosure requirements in modern society that have to be complied with even though there may in fact be some incidental incriminating effects upon the party required to comply—provided that the regulatory requirements in question are strictly noncriminal in nature and have general applicability throughout the society. That is essentially what the Supreme Court did in *Baltimore Dept. of Social Serv. v. Bouknight*, 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990), as indicated above, in which the Supreme Court recognized that the act of producing the child in question would itself have testimonial effect which could be incriminating but nevertheless would be required.

135 B.R. at 730–31. The *Fairbanks* court concluded:

> In my opinion had the documents still been in the possession of the debtor at the time of the bankruptcy this court could have validly ordered the debtor to produce the same to the trustee in bankruptcy under the *Harris–Johnson–Fuller* line of decisions which I believe have not been abrogated by the *Fisher* decision but instead have continued validity under the balancing rationale used in the *Bouknight* decision by the Supreme Court.

It cannot be said that the Bankruptcy Code provides a regulatory or investigative regime designed to ferret out prospective criminal defendants. Under chapter 7 of the Code there is a statutory liquidation procedure of general applicability which depends upon, and requires full disclosure by the debtors involved in such proceedings. On the other hand, it can be said that liquidation of business cases under chapter 7 of the Code would be severely hampered, if not rendered impossible, were the bankruptcy debtor able to withhold from the trustee the books and records of the business on grounds of possible incriminatory effects as to certain of those records.

135 B.R. at 733. *Accord Charter Fed. Sav. Ass'n v. Rezak (In re Lederman)*, 140 B.R. 49, 52–53 (Bankr.E.D.N.Y.1992) (in adversary proceeding to determine nondischargeability, debtor had no right to refuse to produce documents pursuant to discovery request).

■ Therefore, even if the implicit testimony compelled by the act of production infringed on the debtors' Fifth Amendment rights—a conclusion this Court has rejected in this case—the nature of chapter 7 as a regulatory system applicable to society as a whole, and which is not directed toward discovery of criminal behavior, prevents the implicit testimony from rising to levels subject to the Fifth Amendment privilege.

In summary, the Court finds that the Fifth Amendment privilege may not be claimed by the debtors with regard to papers of the estate, for the following reasons. First, the Fifth Amendment provides no protection for the contents of documents. Second, the act of producing the documents required here is not sufficiently testimonial or incriminating to come within the protection of the Fifth Amendment. Third, the *Harris* line of cases holds that a bankrupt is not able to claim the privilege with regard to documents relating to property of the estate, and *Fisher* does not modify that rule. Fourth, even if the act of production might be testimonial by im-

plicitly authenticating the documents, debtors have not made a positive disclosure to support invocation of the privilege. Fifth, even if the act of production involved here was both testimonial and incriminating, the nature of chapter 7 as a regulatory regime directed toward society as a whole, and not toward inherently suspect criminal classes, renders the act of production outside the protection of the Fifth Amendment.

Closely related to the question of turnover of documents is the question of whether debtors can be compelled to turn over to the trustee all property of the estate. Pursuant to the *Harris* line of cases, and for the same reasons set forth above, the Court finds that such a turnover order does not infringe the debtors' Fifth Amendment rights. *See In re Devereaux*, 48 B.R. 644, 645–46 (Bankr.S.D.Cal.1985) (order for debtor to turn over all property of the estate to the trustee and to certify under penalty of perjury that she had done so did not violate Fifth Amendment); *In re Crabtree*, 39 B.R. 726, 731 (Bankr.E.D.Tenn. 1984) (turnover of assets is not testimonial, and thus not within scope of Fifth Amendment); *In re Kaufman*, 35 B.R. 26 (Bankr.D.Hawaii 1983) (debtor's privilege against self-incrimination was not infringed by requiring the debtor to, *inter alia*, turn over to the trustee all property of the estate).

The trustee also requests an order directing the debtors to identify all persons in possession or control of recorded information concerning the estate, to identify the extent to which the debtors own or control any corporation in which they possess an interest and to identify the custodian of the books and records of such corporations, and to identify all transfers of property of the estate since the filing of the petition. Much of the requested information is normally required to be provided in the schedules, and the debtors have asserted a Fifth Amendment privilege to any question, regardless of its nature.[5]

■ As mentioned above, a claim of the Fifth Amendment privilege is subject to court review.

> The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, ... and to require him to answer if "it clearly appears to the court that he is mistaken."

*Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (quoting *Temple v. Commonwealth*, 75 Va. 892, 899 (1880)). The Court then set out the standard by which a claim of privilege is judged.

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

*Id.* (quoting *Ex parte Irvine*, 74 F. 954, 960 (C.C.S.D.Ohio 1896)). However, if the trial judge decides there is no threat of self-incrimination, "it then becomes incumbent 'upon the defendant to show that answers to [the questions] might criminate him.'" *Neff, supra*, 615 F.2d at 1240 (alteration in original) (quoting *United States v. Weisman*, 111 F.2d 260, 261 (2d Cir.1940)). This must take the form of "'some positive disclosure by the witness of its [the question's] hidden dangers.'" *Id.* (quoting *Hashagen v. United States*, 283 F.2d 345, 350 (9th Cir.1960)).

■ The debtors' attorney represented at oral argument of this matter that the debtors are concerned that the Internal Revenue Service is investigating them with

---

5. In addition to claiming the privilege with regard to virtually all of the schedules, it was indicated at oral argument that the debtors asserted the privilege at the first meeting of creditors as to any questions that might be put to them regarding their assets, liabilities, or property.

the aim of obtaining a criminal indictment. It is difficult to envision any way in which the act of revealing the identity of persons in custody or control of property of the estate would incriminate the debtors under the tax laws, and the same may be said of the other information requested of the debtors. Debtors have not come forward with a positive disclosure to demonstrate that there are hidden dangers associated with providing the information. Moreover, the debtors apparently intend to assert the privilege against self-incrimination against any question propounded, whether or not the question actually requests information within the scope of the privilege. In light of these factors, the Court concludes that the debtors have failed to demonstrate that the information is within the scope of the Fifth Amendment privilege. The debtors will be directed to present the requested information.

A separate order will be entered.